Jasen, J.
Plaintiff commenced this action on behalf of himself and, as a class action, on behalf of all other similarly situated employees of the State of New York, to recover benefits for the services of a psychologist under a group major medical expense policy issued by the defendant insurance company (Metropolitan). There are two appeals before us, one concerning the merits of the claim for benefits, and the other involving plaintiff’s right to bring a class action.
Turning first to the individual claim, plaintiff contends, and the courts below agreed, that Metropolitan’s action in refusing payment for the services of a psychologist violated section 221 (subd. 5, par. [e]) of the Insurance Law. Metropolitan argues, on the other hand, that the statute, enacted subsequent to the issuance of the group policy, impairs the obligations of a preexisting contract in violation of the Constitution of the United States.
Plaintiff, as an employee of the State of New York, is covered under a group major medical policy issued to the State by Metropolitan in 1957. Shortly after commencing his employ *309 ment with the State, plaintiff began a course of treatment with a psychologist for a mental ailment and submitted thb bills for the treatment to Metropolitan for reimbursement in accordance with the terms of the policy. Reimbursement was denied by Metropolitan upon the sole ground that “ Psychologists’ charges [were] not covered under Major Medical Plan Throughout 1971, plaintiff continued to receive treatment, and in January, 1972 resubmitted his claim for reimbursement, calling Metropolitan’s attention to section 221 (subd. 5, par. [e]) of the Insurance Law. Defendant again resisted payment on the basis that psychologists are not licensed physicians. Thereafter, plaintiff instituted this action.
Under the terms of the group medical policy, Metropolitan agreed to reimburse insured employees for 80% of their covered medical expenses incurred during a calendar year. Covered medical expenses are defined to include the “ services of licensed physicians and surgeons ” and “ surgical services of duly licensed dentists and of duly licensed podiatrists ”. It is conceded that the contract does not provide for reimbursement of services by a pyschologist.
Subsequent to the issuance of this policy, the Legislature in 1969 amended section 221 of the Insurance Law [L. 1969, ch. 765] by adding subdivision 5, which provides in pertinent part: “ Notwithstanding any provision of a policy or contract of group accident, group health or group accident and health insurance, whenever such policy or contract provides for reimbursement for the diagnosis and treatment of mental, nervous, or emotional disorders or ailments, a subscriber to such group accident, group health or group accident and health insurance policy or contract shall be entitled to reimbursement for such covered diagnosis or treatment which is performed by a physician or a duly certified and registered psychologist when the services rendered are within the lawful scope of their practice, and when such policy or contract or any certificate issued thereunder is delivered or issued for delivery without this state by an authorized insurer, covered persons residing in this state shall be entitled to reimbursement for such diagnosis and treatment by a physician or a certified and registered psychologist as hereinabove provided.” This amendment became effective September 1,1969.
*310 The section was again amended in 1971 [L. 1971, ch. 1211]. The amendment provides (additions to the 1969 law are italicized; deletions are indicated by [bracketed material]): “(e) Notwithstanding any provision of a policy or contract of group accident, group health or group accident and health insurance, whenever such policy or contract provides for reimbursement to a physician or a psychiatrist for psychiatric or psychological services or for the diagnosis and treatment of mental, nervous, or emotional disorders or ailments, however defined in such policy or contract, a subscriber to such group accident, group health or group accident and health insurance policy or contract shall be entitled to reimbursement for such [covered] psychiatric or psychological services or diagnosis or treatment [which is] whether performed by a physician, psychiatrist, or a duly certified and registered psychologist when the services rendered are within the lawful scope of their practice, and when such policy or contract or any certificate issued thereunder is delivered or issued for delivery without this state by an authorized insurer, covered persons residing in this state shall be entitled to reimbursement for such diagnosis and treatment by a physician, psychiatrist or a certified and registered psychologist as hereinabove provided.” This amendment became law on July 6, 1971,. and stated it “ shall take effect immediately and shall only apply to policies written, renewed, modified or altered on or after such date.”
The basic question is whether the statute requiring Metropolitan to reimburse policy holders for psychologists ’ payments violates the constitutional prohibition against interfering with the right of contract. The statute as amended simply means that where an insurance policy provides for reimbursement to a physician or a psychiatrist for psychiatric or psychological services, coverage shall also be provided by the insurance company for psychological services when performed by a psychologist within the lawful scope of his practice. Obviously, the Legislature took cognizance of the fact that certain treatments of mental and emotional illnesses are common to both psychiatrists and psychologists and, therefore, should be reimbursed accordingly. The Legislature did not say that reimbursement for psychological services by a psychologist should be included in every health insurance contract, but, on the contrary, indi *311 coted that only policies which allow reimbursement for “ psychological services ” performed by a “ physician or a psychiatrist ” are affected.
Although the statute, as originally enacted in 1969, did not contain any specific language as to its applicability, the subsequent amendment of the law by the Legislature in 1971 stated that the law, as enacted, was meant to apply to policies ‘ ‘ written, renewed, modified or altered on or after such date ” of enactment. Thus, it is abundantly clear that the statute is prospective in its application.
Metropolitan, in agreeing that the statute should be given prospective application, argues that the amendments should have no application to the group policy in question as the policy was issued prior to the effective date of the statutory enactment. While it is true that the original contract of insurance was entered into in 1957, more than 12 years prior to the enactment of the first amendment of section 221, the term of the policy[1] was for “ one year commencing tin the date of issue hereof and shall be renewed from year to year thereafter, unless [the] policy is terminated as herein provided.”[2]
By its very terms, Metropolitan had the absolute right to terminate the policy on its anniversary date by giving the State at least 90 days prior written notice. (Art. X, subd. [2], par. [b].) Certainly, if Metropolitan did not wish to extend coverage to include reimbursement for services rendered by a psy *312 chologist, it had the option not to renew the contract on the next anniversary date of the policy following the enactment of the statute. In addition, thé insurance company had the option, upon any “ premium due date ”, to change the insurance premium rate by giving written notice of such change at least 60 [3] days prior to the effective date of such change. (Art. XI, subds. [3], [4].) In other words, if Metropolitan did not wish to invoke the drastic remedy of termination to avoid the increased burden of underwriting coverage mandated by section 221 (subd. 5, par. [e]) of the Insurance Law, it could have simply raised the premium rate to offset any higher costs resulting from such additional coverage. Thus, where, as here, an insurer has the absolute right to terminate a policy on its anniversary date or to change the insurance premium rate without the State’s consent, the policy is modified upon renewal of the policy, by operation of law, to include reimbursement for services rendered by psychologists, as provided for by statute.
Where, however, the insurer does not have the right to terminate the policy or change the premium rate without consent of the State, renewal, by the payment of premiums, merely continues in force the pre-existing policy, and statutes enacted subsequent to its original enactment cannot be applied. (Mulligan v. Travelers Ins. Co., 280 App. Div. 764, affd. 306 N. Y. 805.) Thus, we conclude that the element of choice under the contract, granted to the insurer, makes the prospective application of the statute constitutionally permissible. (Cf. Neblett v. Carpenter, 305 U. S. 297.)
Metropolitan also claims that since psychologists are not permitted to practice medicine, the statute is not applicable inasmuch as the policy merely covers “ medical services”. The argument is specious. There is no doubt that some services rendered by a physician may also be rendered by a psychologist. To this extent, the two professions overlap and, as plaintiff points out, it is only in those situations where the practices overlap that the statute mandates reimbursement for psychologists’ services. Indeed, Metropolitan makes no claim that its policy would not cover services here rendered if administered by a physician rather than a psychologist, or that the services are not *313 medical in nature. It is error to equate the “ practice of medicine ” (Education Law, § 6521), which is restricted to licensed physicians with the furnishing of “medical services ” which obviously may be performed by any of a number of professionals or paramedical personnel, as specifically authorized by the policy. (Art. V, subd. [2] — Covered Medical Expenses.)
There remains the issue involving plaintiff’s right to bring a class action. The court affirms the dismissal of this cause of action only because it is satisfied that on any view this complaint merits no such procedure. It notes, however, that the restrictive interpretation in the past of CPLR 1005 and its predecessor statutes no longer has the viability it may once have had. (See Hall v. Coburn Corp. of Amer., 26 N Y 2d 896, 401; Zachary v. Macy & Co., 31N Y 2d 443; Seventeenth Annual Report of N. Y. Judicial Conference, 1972, p. 242; Eighteenth Annual Report of N. Y. Judicial Conference, 1973, p. A 35.) The court is also aware that there was pending before the Legislature last year and will be again this year a comprehensive proposal to provide a broadened scope and a more liberal procedure for class actions, an objective shared by the members of this court. (See Senate Bill, No. 8544 [1972]; Assembly Bill, No. 10448 [1972].) Because the proposed statute would assure limitations and safeguards which would be highly desirable in broadening the jurisdiction of the courts of this State over class actions, legislation in this area is highly preferable to the alternative of judicial development in the same direction. In our view there is urgency for early legislation to accomplish these purposes, in light of the general and judicial dissatisfaction with the existing restrictions on class action which in many instances may mean a total lack of remedy, as a practical matter, for wrongs demanding correction.
Accordingly, we affirm the order appealed from in both cases.
In the first above-entitled appeal: Order affirmed, with costs to appellant.
Judges Btjbke, Bbeitel, G-abbiblli and Jones concur with Judge Jasen ; Chief Judge Fold taking no part; Judge Wachtleb dissents and votes to reverse in the following memorandum: I am to reverse and believe that this class should be certified. As is noted by the majority, “ the restrictive interpretation in *314 the past of CPLR 1005 and its predecessor statutes no longer has the viability it may once have had ”. Remembering that those restrictive interpretations were a product of this court, it would seem most appropriate that this court, recognizing the need for a broadened and more liberal procedure for class actions, should take the initiative in that direction.
In the second above-entitled appeal: Order affirmed, with costs.
Chief Judge Fuld and Judges Bubke, Bbeitel, G-abbxelli, Jones and Wachtleb concur.

. Article X of the contract provides:
“ (2) This Policy shall be terminated
“ (a) By default in the payment of premiums in accordance with Article XI hereof,
“ (b) At the option of the Insurance Company on any anniversary of the date of issue by giving at least ninety days prior written notice to the Employer.”

. Amended in 1962 to read “ninety days”.