**Robert W. McCUNE, Plaintiff-Appellee,**

v.

**Louis J. FRANK, Commissioner of Police of the County of Nassau, and the Police Department of the County of Nassau, Defendants-Appellants.**

No. 871, Docket 75–7027.

United States Court of Appeals,
Second Circuit.

Argued May 15, 1975.

Decided July 16, 1975.

William S. Norden, Deputy County Atty. (John F. O'Shaughnessy, County Atty. of Nassau County, Mineola, N. Y., Natale C. Tedone, Senior Deputy County Atty., of counsel), for defendants-appellants.

Allen R. Morganstern, Mineola, N. Y. (Richard Hartman, Mineola, N. Y., of counsel), for plaintiff-appellee.

Before SMITH and OAKES, Circuit Judges, and JAMESON, District Judge.*

---

\* Senior United States District Judge for the District of Montana, sitting by designation.

1. Article VIII, Rule 22 provides:

Members of the Force and Department shall be neat and clean at all times while on duty. Male personnel shall comply with the following grooming standards unless excluded by their Commanding Officer due to special assignment:

Haircuts —Hair shall be neatly cut and trimmed at all times while on duty. Hair styles shall be conservative and not excessive in length.

Sideburns —Sideburns shall not extend below the mid part of the ear and shall· be trimmed level.

Moustaches—A short and neatly trimmed moustache may be worn, but shall not extend over the top of the upper lip or beyond the corners of the mouth.

J. JOSEPH SMITH, Circuit Judge:

Robert McCune is a Nassau County Police Officer whose sideburns extend to the lower edge of his earlobe and then flare out to a width of at least an inch and a quarter. On July 5, 1974, he was served with departmental charges specifying that on or about 1200 hours on May 14, 1974, he violated Article VIII, Rule 22 of the Rules and Regulations of the Nassau County Police Department which, as amended by Teletype Order 114 of April 23, 1971, forbids officers of the Department from sporting sideburns that "extend to a point below ¾ of an inch above the bottom of the ear lobe." [1] A hearing was scheduled for July 16; McCune appeared and entered a plea of not guilty, and a trial was scheduled for September 17. Preferring to raise his constitutional objections to the regulation in federal court, McCune commenced this action in the United States District Court for the Eastern District of New York on September 5, 1974. His complaint—naming as defendants Police Commissioner Louis Frank and the Nassau County Police Department—alleged that the Department's grooming regulation was unconstitutional under this court's decision in *Dwen v. Barry*, 483

Beards
Goatees —Male personnel shall be clean shaven when reporting for duty. Beards or goatees shall not be worn while on duty. A growth of whiskers shall be permitted while on duty for medical reasons only when approved by the Chief Surgeon.

On April 23, 1971 the Department issued Teletype Order 114, providing:

Personal Appearance—The provisions of Article VIII, Rule 22 of the Rules and Regulations pertaining to sideburns shall be adhered to and in no case shall sideburns extend to a point below ¾ of an inch above the bottom of the ear lobe. All provisions relating to moustaches, beards and haircuts shall be strictly conformed with.

F.2d 1126 (2d Cir. 1973),[2] and that the disciplinary board assigned to hear his case was institutionally biased, in violation of his due process rights. On the date the complaint was filed Judge Rayfiel signed an order temporarily restraining the departmental proceedings against McCune, and this order was continued in effect by agreement pending the outcome of the suit. The parties thereafter "set aside" the bias claim "as an issue not to be litigated,"[3] and a hearing on the constitutionality of the grooming regulation was held before Chief Judge Mishler. In a memorandum and order dated December 13, 1974, Judge Mishler held the regulation invalid under *Dwen* and enjoined its enforcement. We hold that the district court reached the constitutional issue prematurely, and we therefore vacate its order and remand for further proceedings.

## I. RES JUDICATA

Initiating legal challenges to grooming regulations appears to be a political obligation of presidents of Policemen's Benevolent Associations. The plaintiff in *Dwen v. Barry, supra,* 483 F.2d 1126, was president of the Suffolk County PBA. His counterpart in Nassau County, Daniel Greenwald, chose to bring his parallel action in state court. The decision proved unfortunate. The Supreme Court for Nassau County held Article VIII, Rule 22 constitutionally valid and entered summary judgment for defendants. *Greenwald v. Frank,* 70 Misc.2d 632, 334 N.Y.S.2d 680 (Nassau County Sup. Ct. 1972). The Appellate Division modified the judgment[4] and affirmed,

holding that "this regulation does not raise issues which rise to the dignity of constitutional questions." 40 A.D.2d 717, 337 N.Y.S.2d 225, 226 (2d Dept. 1972). The Court of Appeals affirmed without opinion. 32 N.Y.2d 862, 346 N.Y.S.2d 529, 299 N.E.2d 895 (1973). Greenwald—(perhaps because he lost the lawsuit?)—was replaced as president of the PBA by Cliff W. Schmidt, who promptly started another round of litigation. The inspiration for Schmidt's action was this court's decision in *Dwen,* which was handed down less than three months after the affirmance of *Greenwald* by the New York Court of Appeals. But Schmidt made the same tactical decision as his predecessor, choosing to bring his action in the Supreme court for Nassau County. Not surprisingly, that court chose to follow the rule laid down by its own appellate superiors rather than this court's decision in *Dwen* and dismissed Schmidt's action on the precedential authority of *Greenwald.* *Schmidt v. Frank,* No. 20014/73 (Nassau County Sup.Ct., Feb. 13, 1974). Seeking refuge in a friendlier forum, Schmidt did not appeal, but commenced virtually the same action in the United States District Court for the Eastern District of New York, only to be met with a dismissal by Judge Costantino on *res judicata* grounds. *Schmidt v. Frank,* 373 F.Supp. 1399 (E.D.N.Y. 1974).[5]

In the meantime, Greenwald had not given up. The Department brought charges against him for violating Rule 22, in that he refused to trim his moustache so that it would not extend below his upper lip and beyond the ends of his mouth. He was found guilty and fined a

---

**2.** After our decision in *Dwen* reversing the district court's dismissal of a Suffolk County Police Officer's challenge to his department's grooming regulation and remanding for a trial, the district court held the Suffolk regulation invalid. We affirmed without opinion. 508 F.2d 836 (2d Cir.), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975).

**3.** Appellee's brief at 2.

**4.** The modification struck from the judgment the decretal provision dismissing Greenwald's

petition and substituted a provision adjudging the regulation valid.

**5.** Regardless of whether Judge Costantino should have given *Greenwald res judicata* effect—essentially the question raised by this appeal—it is obvious that he was correct in holding that the state court decision in *Schmidt* should have barred the identical action brought by the same plaintiff in federal court.

day's pay.[6] He petitioned the Appellate Division for review, again attacking the rule's constitutionality; his petition was dismissed on the merits, Justice Shapiro dissenting. *Greenwald v. Frank*, 47 A.D.2d 628, 363 N.Y.S.2d 955 (2d Dept. 1975).

In the district court the defendants claimed that the state court decisions in *Greenwald* and *Schmidt* were binding as a matter of full faith and credit[7] and *res judicata*.[8] Although McCune was not a party to those actions, he was a member of the PBA at the time they were decided; therefore, it was urged, he is bound by the state court judgments under a theory of "virtual representation." *See* 46 Am.Jur.2d *Judgments* § 539 *et seq.* (1969). The district court, apparently agreeing that there was an identity of parties between this and the prior actions,[9] held that *res judicata* was nonetheless inapplicable because there was no identity of issues.

There is no identity of issues here; the claim which McCune is asserting was not litigated or determined in any of the prior state court proceedings.

In *Greenwald*, Justice McCaffrey discussed the validity of Rule 22; however, his decision did not rest on a finding of constitutionality. On the contrary, the plaintiff's petition was dismissed solely on the ground that "the petitioner has not demonstrated that a triable issue exists concerning the relationship of his determining his own personal appearance while in uniform to that of the public interest." [Citation omitted.] The affirming opinion held:

"[T]his regulation [Article VIII, Rule 22] does not raise issues which rise to the dignity of constitutional questions."

[Citation omitted.] Thus, prior to the Second Circuit's decision in *Dwen v. Barry*, 483 F.2d 1126, the New York state courts failed to consider the constitutional issue raised here.

*McCune v. Frank*, No. 74 C 1279 at 5–6 (E.D.N.Y. Dec. 13, 1974), *quoted in* Appendix of Appellant at A501–02.

We cannot agree with the district court. The only conclusion that can possibly be drawn from the state court opinions in *Greenwald* and *Schmidt* is that plaintiffs there challenged the constitutionality of Rule 22 and the courts rejected the challenges as frivolous. While we may disagree with the New York courts' conclusions, we cannot ignore the fact that those conclusions were drawn. We hold that the district court erred in its determination that the New York courts did not consider the constitutional issue raised here.

Establishing that the New York courts rendered final judgments on the merits of the same issues raised here does not dispose of the case, however, for we still must decide whether there was a sufficient identity of parties to invoke *res judicata*. *Kreager v. General Electric Co.*, 497 F.2d 468, 472 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974). McCune was not himself a party to the state court actions, and the question is whether the decisions there rendered should nonetheless bind him. One fact in the history of this litigation is extremely significant in this

---

6. He was fined an additional three days' pay for refusing to obey an order to trim his moustache.

7. Defendants rely on 28 U.S.C. § 1738, which provides in pertinent part:

   . . . [The] records and judicial proceedings [of any State, Territory or Possession] . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

8. In the circumstances of this appeal, the requirements of full faith and credit and of *res judicata* are substantially identical. *See Riley v. New York Trust Co.*, 315 U.S. 343, 349, 62 S.Ct. 608, 86 L.Ed. 885 (1942); *Thistlethwaite v. City of New York*, 497 F.2d 339, 341 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974); 1B J. Moore, *Federal Practice* ¶ 0.406[1] (2d ed. 1974).

9. It is unclear whether this was a holding or an assumption *arguendo*.

regard: it appears that the New York courts themselves have not accorded their own decisions *res judicata* effect. Although Schmidt was no doubt a member of the PBA at the time the first *Greenwald* case was decided, his state court action was dismissed not on *res judicata* grounds but on the precedential authority of *Greenwald*—that is, on *stare decisis* grounds. And even when Greenwald sought review of his departmental conviction, his petition was dismissed on its merits, not on the basis of *res judicata*. Justice Shapiro's dissent argued that, although Greenwald was bound by *res judicata* from relitigating the validity of Rule 22 on its face, he was nonetheless free to raise the issue of whether the Rule was constitutional as applied. 363 N.Y.S.2d 955 at 961.

■ The demonstrated reluctance of the New York courts to give their prior decisions *res judicata* effect should weigh heavily in our consideration of that issue since we are not bound to give a state court decision any greater *res judicata* effect than would the rendering court itself. "[W]hat effect a judgment of a state court shall have as *res judicata* is a question of state or local law. . . . " *Union and Planters' Bank v. Memphis*, 189 U.S. 71, 75, 23 S.Ct. 604, 606, 47 L.Ed. 712 (1903). In Civil Rights Act cases such as this, brought under 42 U.S.C. § 1983, the policy of favoring the

federal forum, *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972),[10] should make us especially careful to ascertain precisely what effect the state courts would give to their own prior judgments.

In the present case, the record is insufficient for us to make that determination. New York would presumably accord *res judicata* effect to the prior judgments if they had been conducted and decided as class actions since under New York's then-effective class action statute, CPLR § 1005 (McKinney 1963),[11] judgments are binding on members of the class.[12] *Graham v. Board of Supervisors*, 25 A.D.2d 250, 269 N.Y.S.2d 477 (4th Dept.), *appeal dismissed*, 17 N.Y.2d 866, 271 N.Y.S.2d 295, 218 N.E.2d 332 (1966); *see also*, as to the *res judicata* effect of judgments in federal class actions, *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 411–413 (2d Cir. 1975). While the reported decisions in the prior actions are captioned as class actions, there is no indication in the opinions of whether class members were given notice of the actions, whether the actions were in fact pursued as class actions, or whether the courts made any findings that they could proceed as class actions.[13] The records of the New York cases were not made part of the record on this appeal, however, and considering New York's traditionally restrictive ap-

---

**10.** Indeed, that policy has informed the creation of special rules whereby in certain circumstances state court judgments are accorded perhaps even a lesser effect by a federal court in a Civil Rights Act case than they would be given by the state courts, *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Lombard v. Board of Education of the City of New York*, 502 F.2d 631 (2d Cir. 1974), *cert. denied*, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975).

**11.** § 1005. Class actions

(a) When allowed. Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.

(b) Protective orders; notice. The court at any stage of the action may impose such

terms as shall fairly and adequately protect the interests of the persons on whose behalf the action is brought or defended. It may order that notice be given in a prescribed manner:

1. of a proposed settlement; or
2. of entry of a judgment.

(c) Court approval for compromise, discontinuance and dismissal. A class action shall not be compromised, discontinued or dismissed by consent, by default or for neglect to prosecute except with the approval of the court. As amended L.1962, c. 318, § 4.

**12.** Defendants' theory of "virtual representation" is simply the general proposition that judgments in class actions bind members of the class.

**13.** *Compare* Rule 23(c)(3), Fed.R.Civ.P., requiring the trial court to describe in its judgment the members of the class who are to be bound thereby.

proach to class actions, *see Moore v. Metropolitan Life Insurance Co.*, 33 N.Y.2d 304, 313, 352 N.Y.S.2d 433, 439, 307 N.E.2d 554 (1973), we would hesitate to hold, simply on the basis of the cases' captions, that they in fact were properly conducted as class actions and that their judgments purported to bind the ·class. Moreover, even if we were assured that the first *Greenwald* case was a class action, we would not want to hold McCune barred without knowing why Schmidt's state court action was decided on the merits rather than on *res judicata* grounds. It may well be that *res judicata*, which must be pleaded affirmatively,[14] simply was not raised as a defense. But without the record in the Schmidt case we do not know whether that in fact was what happened or whether perhaps the defense was raised and rejected.

■ Because our inability to determine whether New York would hold McCune bound by the prior decisions is the result of an inadequate record, we vacate the district court's judgment and remand the case so that the parties can develop the record. If, upon being provided with the necessary materials, the district court concludes that New York would hold McCune bound, it should dismiss the action on *res judicata* grounds. If, on the other hand, it determines that New York would let him proceed, it should do likewise.

## II. CONSIDERATIONS ON REMAND

Even if the district court decides that McCune is not barred by *res judicata*, it should not reinstate its judgment without considering several preliminary issues.

The first such issue is whether the pendency of disciplinary hearings against McCune bars his action under the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[15] There the Court held that considerations of comity preclude federal courts from enjoining pending state criminal proceedings in the absence of extraordinary circumstances. A companion case to *Younger, Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), held that the same result obtains when a federal court is asked to issue a declaratory judgment on the constitutionality of a state statute pursuant to which a prosecution is pending. Subsequent decisions have indicated that *Younger* is not limited to criminal proceedings. *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) (military court-martial); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (state court nuisance action seeking to shut down theater showing allegedly obscene films); *Anonymous v. Association of the Bar of the City of New York*, 515 F.2d 427 (2d Cir. 1975) (bar association disciplinary proceedings). The holding in *Schlesinger* rested largely on the unique role of the military in our society, 420 U.S. 592 at 757–758, 95 S.Ct. 1300 at 1313, 43 L.Ed.2d 591; since we have rejected the notion that discipline in the police force is to be given the same judicial deference as military discipline, *Dwen v. Barry, supra*, 483 F.2d 1126 at 1128–29, that decision is not necessarily controlling here. *Huffman*, on the other hand, was premised on the determination that the state court action, though nominally civil, was in some respects more like a criminal action: the state was party and the action

---

**14.** *Bronxville Palmer, Ltd. v. State*, 18 N.Y.2d 560, 277 N.Y.S.2d 402, 223 N.E.2d 887 (1966); *Krekeler v. Ritter*, 62 N.Y. 372 (1875); *Halladay v. Kolner*, 276 App.Div. 943, 94 N.Y.S.2d 886 (1950).

**15.** *Younger* is apparently not a defense that must be pleaded affirmatively. When the Supreme Court noted probable jurisdiction in *Sosna v. Iowa*, 415 U.S. 911, 94 S.Ct. 1405, 39 L.Ed.2d 465 (1974), it directed the parties to

brief the *Younger* issue although it evidently had not been raised below. On the other hand, *Younger* is not jurisdictional, since in *Sosna* the Court permitted the state to waive it, 419 U.S. 393, 396–97 n. 3, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and jurisdiction of course is not waivable. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 613 n. 1, 95 S.Ct. 1200, 1212 n. 1 (dissenting opinion of Brennan, *J.*)

was in aid of the state's criminal statutes. 420 U.S. 592 at 603–605, 95 S.Ct. 1200 at 1208. Similar factors were found to be present in *Anonymous v. Association of the Bar,* where the court pointed out that the relevant lines of inquiry are whether "the proposed interference [in the state proceedings] . . . is comparable to the disruption . . . of the state's interest in maintaining the standards of its criminal laws," and whether the proceedings "involve much more than private litigation between individual litigants." 515 F.2d 427, at 432.

■ That we are dealing with a county police department's disciplinary proceeding rather than a state court action is of little moment. A proceeding in a state court is not a pre-requisite to the applicability of *Younger. Schlesinger v. Councilman, supra; Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), *aff'g mem.,* 316 F.Supp. 370 (N.D.Ga.1970). *Geiger* establishes that *Younger* has relevance to administrative proceedings, *see Anonymous v. Association of the Bar, supra,* 515 F.2d 427, at 432 n. 3, and the explanation of *Geiger* in *Gibson v. Berryhill,* 411 U.S. 564, 576–77, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), indicates that this applicability is subject to considerations similar to those subsequently enunciated in *Huffman, supra* and *Anonymous v. Association of the Bar, supra.*

■ The district court's decision in this case was rendered prior to the decisions in *Huffman* and *Association of the Bar.* For that reason, and also because this issue will not have to be faced in the event the district court finds *res judicata* applicable, it is preferable that we refrain at this time from passing on the applicability of *Younger,* and leave it to the district court to consider the issue in the first instance should the need arise.

Unfortunately, the complexities in this area require us to add a few additional

comments. McCune's complaint, it will be remembered, alleged that the disciplinary board hearing his case was biased, and therefore constitutionally defective as a matter of procedural due process. Since *Younger* presupposes the existence of a competent state forum, that doctrine is no bar to an action seeking to enjoin a proceeding claimed to be constitutionally defective. *Withrow v. Larkin,* 421 U.S. 35, 44 n. 8, 95 S.Ct. 1456, 1463 n. 8, 43 L.Ed.2d 712 (1975); *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *but cf. Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), indicating that a finding of bias is not to be made lightly. However, the status of McCune's bias claim is unclear; it is not certain whether the issue was abandoned or simply deferred, not reached by the court in view of the ruling on the constitutional issue. If the issue is still alive, the district court may consider it free from *Younger* restrictions.[16] If it finds no merit to the claims of bias, it may not proceed to determine the challenge to the grooming regulation unless it finds both *res judicata* and *Younger* inapplicable. If there is merit to the bias argument, then *Younger* will be no bar to deciding the validity of the regulation, but the question of *res judicata* will have to be determined.

To summarize: If the bias claim has not been abandoned the district court should consider it initially. If it finds merit in the claim, it may go on to consider the attack on Rule 22. The first consideration would be defendants' claim of *res judicata* ; only if it is decided that *res judicata* is inapplicable may the validity of the regulation as applied to McCune be considered. If on the other hand the bias claim is found to be without merit, the questions of *res judicata* and, if that is no bar, *Younger v. Harris,* will have to be decided before the rule's constitutionality can be assessed. This is

**16.** It would appear that this issue was not raised, nor could it have been raised, in any of

the prior actions. Thus, *res judicata* would seem to be no bar.

also the order in which the district court should address the issues if it finds that the bias claim was abandoned.

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.