Abraham J. Gellinoff, J.
The Health Insurance Association of America, and various insurance companies, have brought this action for a judgment declaring unconstitutional a recently enacted statute which, requires that every health insurance policy issued in this State include "coverage for maternity care * * * to the same extent that hospital, surgical or medical coverage is provided for illness or disease under the policy”. Defendant Superintendent of Insurance now moves for summary judgment, and plaintiffs cross-move for summary judgment.
The challenged statute, chapter 843 of the Laws of 1976, was adopted as part of the Governor’s legislative program. In urging adoption of the bill, the Governor, in his program bill memorandum, said: "This bill, by providing essential maternity coverage, recognizes that for younger persons the greatest single need for health insurance protection coverage is for maternity care. Rising hospital and medical costs have made payment for maternity care a great financial burden for younger people at a time when many are unable to meet the burden.
"The bill also recognizes the insurance concept of sharing of risk among a broad base of the population, particularly recognizing that the young should have their special areas of health concern adequately covered just as the older population is covered for illnesses or diseases more likely to affect them.”
The rationale for the statute further appears from the 1974 *797 report of the Senate Task Force on Critical Problems, entitled Insurance and Women. Noting that (p 19) the issue of maternity coverage "provokes the most controversy in the health insurance field”, the report analyzed typical insurer objections to maternity coverage as follows (pp 19-20):
"It is asserted that pregnancies are both voluntary and budgetable; therefore, they are not insurable or at least not fully insurable because they are a known risk. For many couples, pregnancies are not voluntary due to anti-contraceptian beliefs or inability of the woman to tolerate the birth control pill which is the only contraceptive with near 100 percent effectiveness. While. theoretically pregnancies might be considered voluntary, in practice, this assumption is unrealistic. As for pregnancies being budgetable, this is unrealistic particularly now with inflation and spiraling medical costs. A family has seven to nine months from the discovery of the pregnancy to the time of birth in which money might be saved to pay the anticipated medical costs. The average family does not have the ability to save $100 per month to meet the expected cost of childbirth (about $800 to $1,000).
"The insurance companies argue that only those people who planned to use maternity benefits would purchase a maternity benefit option. This may be true in some cases, but it is fair to assume that most couples who were planning on having a family would chose [sic] to be covered throughout the women’s [sic] childbearing years (at least to age 35) because pregnancies, as noted above, are not always predictable and are very expensive. Also, most policies which now offer maternity benefits require that a conception occur after the effective date of the policy. It is hard to establish statistically at what point couples decide to purchase or cancel maternity coverage because the leading health insurer (Blue Cross/Blue Shield) does not offer a separate maternity option but, rather, offers maternity coverage only as part of family policies. Couples who choose a family policy rather than two individual policies would automatically acquire maternity coverage at increased cost, even if they were 55 years old and had no likelihood of using maternity coverage.
"A leading insurer has recently offered a maternity option to all women — married or single — at a rate of $2.68 per $100 coverage per month with a maximum coverage of $800. For maximum coverage, the cost would be $257.88 per year. This insurer, like other commercial companies, is interested in *798 making a profit. If they expected women to take the maternity option only for the period they needed it, they would be planning to lose $542.12 per insured per pregnancy.”
The resulting statute, chapter 843, requires full maternity coverage — with limitations not here relevant — in all group or individual health insurance policies "written, altered, amended or renewed” on or after January 1, 1977.
Plaintiffs assert in their first cause of action that chapter 843 is unconstitutional in that it deprives them of property without due process of law. Specifically, they claim that the statute will compel irrational and unpredictable premium increases, resulting in decreased business; that the statute impermissibly prevents them from selling their beneficial product, namely, health insurance policies without maternity coverage; and that the statute improperly compels them to enter into a new aind unwanted business.
Plaintiffs further argue, in their second cause of action, that defendant superintendent’s interpretation of chapter 843, that it applies to renewals of "guaranteed renewable” policies, constitutes an unconstitutional impairment of the obligation of contracts.
Finally, in their third cause of action, plaintiffs contend that the January 1, 1977 effective date of the statute did not provide, a reasonable preparation period to enable timely compliance.
Plaintiffs urge that the compulsory inclusion of maternity coverage in all health insurance policies will mandate substantially increased premiums. While conceding that compelled increased premiums do not, per se, invalidate the legislation, plaintiffs argue that the increased premiums will be unreasonable, and irrationally imposed. For, plaintiffs say, since pregnancy is a frequently desired and frequently planned state, many couples planning a pregnancy may purchase health insurance in order to obtain the maternity benefits and then, after obtaining the benefits, permit the policy to lapse. This "anti-selection”, plaintiffs urge, will be a particularly significant factor in individual policies, and will be of such unpredictable proportions as to render accurate setting of premiums virtually impossible.
Plaintiffs contend, moreover, that setting additional premiums based upon mandatory maternity coverage will result in premiums that are unfair. Thus, they argue that, if they do not "rate” premiums in accordance with sex and age, an *799 unfair burden will fall upon elderly health insurance purchasers, who will be paying for maternity coverage they do not need. And, if they do "rate” premiums, so that the increase is spread only among those likely to apply for maternity benefits, the increase will place an unfair burden upon those within the affected age group who do not intend to require maternity benefits.
In this court’s view, plaintiff’s arguments are without merit. The injuries to their business they envisage, and the irrational results they predict, are entirely speculative. The challenged statute is not constitutionally infirm on its face, and it is yet to be applied. Plaintiffs have not yet prepared premium schedules nor proposed policies in order to comply with chapter 843. Consequently, their fears of unfair increases in premiums cannot now be evaluated or determined. Moreover, there are surely a number of ways in which plaintiffs can mitigate the effects of "anti-selection” other than by their own suggested alternatives — drastically increased deductibles or refusal to write individual health insurance for persons of childbearing age. For example, plaintiffs may choose to offer multiyear policies, or they may choose to pool their maternity risks, thereby decreasing the effects on any single insurer. Other means to minimize exposure and spread the risk can be devised by the experienced and expert plaintiffs, as has been done with other coverage involving the danger of "anti-selectian”, such as, for example, dental care. Upon the current state of the record, the court is not persuaded that the statute will result in irrational and unreasonable regulation of the insurance business.
Plaintiffs’ contention that preventing them from engaging in the business of selling insurance policies without maternity benefits is improper, while imaginative, is likewise without foundation. Plaintiffs rely upon decisions voiding statutes which, while purporting to regulate a business, have the effect of destroying it. Thus, in Definace Milk Prods. Co. v Du Mond (309 NY 537), cited by plaintiffs, the Legislature enacted a requirement that evaporated skimmed milk could be sold to consumers in no smaller containers than 10 pounds. Although ostensibly for the purpose of protecting the public from mistakenly purchasing evaporated milk instead of whole milk, the effect of the legislation was to destroy the retail evaporated milk business. The Court of Appeals held that (p 541) "the property of a citizen including his right to sell nondelet *800 erious substances may not be taken from him without rhyme or reason,” and, finding the regulation arbitrary and unreasonable, struck it as violative of due process.
Plaintiffs’ reasoning contorts the facts of this case in an attempt to fit the Defiance Milk mold. Plaintiffs urge that they, too, sell a "nondeleterious” product, namely, health insurance without maternity benefits, which the challenged statute has excluded from sale in this State. But, the statute does not forbid the sale of a nondeleterious product; it simply requires that the product contain an additional ingredient, which the Legislature has determined to be essential for the public welfare.
In their final due process argument, plaintiffs contend that chapter 843 improperly compels them to enter into a new and unwanted business. They rely principally upon the decision of the Supreme Court of North Carolina in Hartford Acc. & Ind. Co. v Ingram (290 NC 457), where the court struck down the North Carolina Legislature’s attempt to ameliorate a growing medical malpractice insurance crisis by requiring all insurers licensed to issue policies of general liability insurance to supply medical malpractice insurance as well. The court stated that (p 468): "Quite clearly, a company which has been carrying on a business of insuring against liability for property damage only would be thrown, by the Act in question, into a type of business utterly foreign to its undertaking and experience. It is further abundantly clear from the record that to compel such company, against its will, to write health care liability insurance for whatever health care provider may see fit to apply to it therefor would subject the company to a risk of financial disaster.” The court thus held that the State lacked the power to "conscript” insurance companies to enter such different and unwelcome business.
The instant case is plainly distinguishable from Hartford. Here, the challenged statute does not require insurers to enter into a new business, but merely to include in their health insurance coverage a health care expense not previously covered. Maternity coverage is not a "business utterly foreign” to plaintiffs’ health insurance business, but is merely an extension of that business. Thus, the challenged statute is akin to those upheld in California Auto. Assn. v Maloney (341 US 105), where automobile insurers were compelled to participate in a pool for coverage of those unable to obtain insurance and Insurers’ Action Council v Heaton (423 F Supp 921), *801 where health insurers were compelled to offer a minimum amount of coverage (see, also, Insurance Law, § 162, subds HD-15; § 164, subds 7-f — 7-j; § 221, subd 5; § 659).
Accordingly, chapter 843 does not require plaintiffs to enter into a new and unwanted business, and does not deprive them of due process.
Plaintiffs additionally challenge defendant superintendent’s interpretation of chapter 843 as being applicable to the renewal of "guaranteed renewable” policies. They urge that such interpretation unconstitutionally impairs the obligation of contracts.
"Guaranteed renewable” policies are policies which may be renewed at the sole option of the insured. The insurer may not cancel them except for nonpayment of premiums. Premiums may be increased on the anniversary date of the policy, but only to the extent permitted by defendant superintendent. Plaintiffs argue that to apply chapter 843 to the renewal of their existing "guaranteed renewable” policies, as to which they lack the choice of cancellation, impermissibly alters the contract already agreed upon between themselves and their insureds, and compels plaintiffs to enter the maternity care insurance market even if they would prefer to withdraw entirely from the health insurance business rather than cover maternity care.
Defendant superintendent attempts to justify his interpretation by reliance upon the Court of Appeals decision in Moore v Metropolitan Life Ins. Co. (33 NY2d 304). In Moore, the question before the court was the retroactivity of subdivision 5 of section 221 of the Insurance Law, which provided that, notwithstanding the language of the policy, any health insurance policy that provided reimbursement for the diagnosis and treatment of mental, nervous or emotional disorders by "physicians”, must also provide reimbursement for such services by "registered psychologists”. The court upheld the applicability of the statute with respect to the pre-existing policies there at issue because "where, as here, an insurer has the absolute right to terminate a policy on its anniversary date or to change the insurance premium rate without the * * * [insured’s] consent, the policy is modified upon renewal of the policy, by operation of law, to include reimbursement for services rendered by psychologists, as provided for by statute. Where, however, the insurer does not have the right to terminate the policy or change the premium rate without *802 consent of the * * * [insured], renewal, by the payment of premiums, merely continues in force the pre-existing policy, and statutes enacted subsequent to its original enactment cannot be applied. [Citation omitted.] Thus, we conclude that the element of choice under the contract, granted to the insurer, makes the prospective application of the statute constitutionally permissible (33 NY2d, at p 312).
The holding in Moore does not support defendant superintendent’s interpretation. For the Court of Appeals there ruled that the application of a new statute to currently existing policies upon renewal is "constitutionally permissible” when the insurer has an "element of choice under the contract”, that is, the choice of terminating the policy, or unilaterally increasing premiums to reflect the increased risk. Here, however, the insurer has no such choice. The policies are "guaranteed renewable”, and premium increases are subject to defendant’s approval.
The court is thus impelled to the conclusion that chapter 843 may not, consonant with constitutional requirements, modify by operation of law those policies issued by plaintiffs as "guaranteed renewable” policies (see, also, Mulligan v Travelers Ins. Co., 280 App Div 764, affd 306 NY 805).
Finally, plaintiffs urge that chapter 843 provides an unreasonably short time between the date of enactment and the date of effectiveness. As to this question, the papers submitted demonstrate the existence of material issues of fact as to the adequacy of the time given by the statute, and as to plaintiffs’ claim that defendant’s delays have made timely implementation impossible. Summary judgment, therefore, may not be granted with respect to this third cause of action.
In sum, then, the court concludes that the Legislature validly exercised the police power in mandating that all health insurance policies provide maternity coverage. That this requirement will, to some extent, make plaintiffs’ business more difficult or expensive does not invalidate the statute (see California Auto. Assn. v Maloney, 341 US 105, supra). Nor do plaintiffs’ challenges to the wisdom of the enactment merit consideration by this court (see Nik-O-Lok Co. v Carey, 52 AD2d 375, 379, affd 40 NY2d 1089). However, the statute may not be applied to insurance policies already in existence, which plaintiffs have no choice but to renew at the option of the insured. Finally, the question of the sufficiency of the lead *803 time given plaintiffs for compliance with the statute may only be determined by a trier of fact.
Accordingly, defendant’s motion for summary judgment is granted with respect to the first cause of action, and otherwise denied. Plaintiffs’ cross motion for summary judgment is granted with respect to the second cause of action, and otherwise denied. A prompt trial is directed with respect to the third cause of action.