OPINION OF THE COURT
Jones, J.
The 1976 legislation mandating the inclusion of maternity care coverage in health and accident insurance policies issued after January 1, 1977 is not unconstitutional as to its substantive provisions; however it may not constitutionally require the addition of such coverage to policies in existence before that date but thereafter renewed, if the renewal is at the option of the insured alone without the consent of the insurer.
As a part of his legislative program, the Governor submitted to the 1976 Legislature what has become known as the Mandatory Maternity Care Coverage Law. When enacted as chapter 843 of the Laws of 1976 on July 27, 1976 it added to the Insurance Law sections 162-a and 164-a and subdivision 1-a of section 253, the effect of which was to require that health insurance policies "written, altered, amended or renewed” after January 1, 1977 include coverage for maternity care to the same extent that hospital service and medical expense indemnity are provided under the policies for illness or disease. Maternity care coverage could be limited to reimbursement of covered expenses for maternity care for a period of four days of hospital confinement and to persons covered under the policy for a period of 10 months, or for a lesser period if the pregnancy commenced while the insured was covered by the policy. The coverage was not required to be included in policies issued to public employers or pursuant to plans sponsored by public employers.[1] In his memorandum in *307 support of the legislation the Governor stated:
"This bill, by providing essential maternity coverage, recognizes that for younger persons the greatest single need for health insurance protection coverage is for maternity care. Rising hospital and medical costs have made payment for maternity care a great financial burden for younger people at a time when many are unable to meet the burden.
"The bill also recognizes the insurance concept of sharing of risk among a broad base of the population, particularly recognizing that the young should have their special areas of health concern adequately covered just as the older population is covered for illnesses or diseases more likely to affect them.”
On January 7, 1977 plaintiffs, the trade association of insurance carriers writing individual and group health insurance policies and 22 of the carriers themselves, commenced the present action for a judgment declaring the 1976 statute unconstitutional and enjoining its enforcement by defendant Superintendent of Insurance. By separate causes of action three attacks were mounted. The first cause of action alleged that the Mandatory Maternity Care Coverage Law deprived plaintiffs of property without due process of law by prohibiting them from selling health insurance policies without the specified maternity care coverage and by requiring plaintiffs to sell a type of coverage they may not want to sell and buyers to buy a type of coverage they may not want to buy, at additional cost, such that plaintiffs will be deprived of substantial revenues as a result of the purchasers’ unwillingness to buy. It was asserted that no need exists to justify such a substantial interference with insurers and insureds. The second cause of action alleged that any application of the statute by defendant to guaranteed renewable and noncancelable policies renewed after January 1, 1977 would work an impairment of *308 contractual obligations in violation of section 10 of article I of the United States Constitution. The third cause of action asserted that, by reason of failing to provide adequate time for compliance, including time to obtain guidelines and approval from defendant Superintendent of Insurance of forms and premium rate changes, the statute deprived plaintiffs of property without due process. After an answer had been filed, cross motions for summary judgment were made by the parties.
Special Term granted defendant’s motion as to the first cause of action and plaintiffs’ motion as to the second cause of action; it declared that chapter 843 of the Laws of 1976 does not violate constitutional due process provisions and is a valid exercise of police power in mandating maternity care coverage, but that the statute may not, consonant with constitutional requirements, be applied to existing health and accident policies as to which plaintiffs have no choice but to renew at the option of the policyholders. With respect to the third cause of action, the court found that material issues of fact were presented as to the adequacy of the time for compliance given by statute and as to claimed delays by defendant making timely implementation impossible; it therefore denied both motions for summary judgment addressed to this cause of action and directed a prompt trial. The injunctive relief sought was also denied. The Appellate Division affirmed the dispositions by the Justice at Special Term. We too affirm as to the first and second causes of action and dismiss the appeal as to the third cause of action.
In support of their claim asserted in the first cause of action that the substantive provisions of the statute violate due process, plaintiffs contend that what are described as the burdens it imposes on insurers (to provide a form of coverage plaintiffs may prefer not to supply) and on policyholders (to purchase a form of coverage some may prefer not to receive) are not justified by any rational relation to a valid public purpose. We disagree.
At the outset we observe that insurance is "a business to which the government has long had a 'special relation’ ” California Auto. Assn. v Maloney, 341 US 105, 109); regulation of the industry, closely related as it is to the public interest (Matter of Massachusetts Mut. Life Ins. Co. v Thacher, 15 AD2d 242, 247), "is surely a proper subject for the state’s exercise of its police power” (Country-Wide Ins. Co. v Harnett, *309 426 F Supp 1030, 1035, affd 431 US 934). "[I]t is competent for the legislature, in the interest of the people and to promote the general welfare, to regulate insurance companies and the management of their affairs, and to provide by law for that protection to policy holders which they could not secure for themselves” (People v Formosa, 131 NY 478, 483). "[T]he business of writing insurance is not a right; it is a privilege granted by the State subject to the conditions imposed by the State and to its control and supervision” (Matter of People [Int. Workers Order], 199 Misc 941, 967, affd 280 App Div 517, affd 305 NY 258, cert den 346 US 857).
Plaintiffs do not dispute the right of the Legislature to regulate the insurance industry, nor do they deny that the patent objective of the 1976 legislation — to remedy the absence of adequate insurance coverage for rapidly rising maternity care costs falling on young families usually of moderate income — addressed a legitimate public need.[2] Their quarrel is with the means selected to achieve the legislative goal.
We first note that it has long been recognized that what constitutes required due process varies with the status of the party asserting that there has been a denial thereof as well as with the governmental function involved (cf. Goldberg v Kelly, 397 US 254, 263; Dobkin v Chapman, 21 NY2d 490, 502). Though the test for determining whether due process has been accorded may be said to be constant — i.e., whether there has been protection of the individual against arbitrary action (Ohio Bell Tel. Co. v Commission, 301 US 292, 302) — the specifics required to satisfy the standard may differ. Thus, for example, the procedural due process owed to a tenured teacher with a vested right in a position is not the same as that to which a probationary teacher is entitled (Board of Regents v Roth, 408 US 564).
Turning then to plaintiffs’ challenge, we reiterate that a reasonable exercise of the State’s police power is not constitutionally infirm as violative of the due process clause (Nettle- *310 ton Co. v Diamond, 27 NY2d 182, 196). When a statute is challenged on nonprocedural grounds as violative of due process of law the question is whether there is some fair, just and reasonable connection between it and the promotion of the health, comfort, safety and welfare of society (Montgomery v Daniels, 38 NY2d 41, 54; People v Bunis, 9 NY2d 1, 4). Judicial inquiry begins with the recognition that as a matter of substantive law every legislative enactment is deemed to be constitutional until its challengers have satisfied the court to the contrary and that the Legislature is presumed to have investigated and found the existence of a situation indicating the need for and the desirability of the statute (Montgomery v Daniels, 38 NY2d 41, 54, supra). Whether the enactment of chapter 843 of the Laws of 1976 be examined as an exercise of police power, the reasonableness of which must be measured against the foregoing standard (as plaintiffs seem to contend by the authorities they cite), or whether it be examined as an exercise of the Legislature’s regulatory authority over the insurance industry — to which perhaps a less stringent standard of scrutiny is applicable[3] — we find no difficulty in concluding that the substantive provisions of the legislation do not deprive plaintiffs of due process of law.
It is clear, at least at this time and on a record compiled only shortly after the effective date of the statute, that the mandate of the legislation for provision of maternity care coverage in individual and group health insurance policies may be expected to be an effective method of meeting the need for such coverage identified at the time of submission and adoption of the legislation. Whereas, under conditions as they existed prior to January 1, 1977, benefits to compensate for medical expenses incident to childbirth were not widely available and, to the extent available, were not nearly adequate to provide a significant measure of protection against such ex *311 penses, after the effective date of chapter 843, coverage would be provided to the broad segment of the population who enjoy coverage against medical expenses occasioned by illness or disease and to the same extent as such latter coverage. That the extension of protection thus accomplished will be substantial is demonstrated by plaintiffs’ own estimate of premiums to be generated by such coverage as running in the millions of dollars annually. Whether plaintiffs’ apprehensive speculation that the inclusion of maternity coverage in health insurance policies with resulting increases in premiums will bring about a consequent loss of business to insurers as insureds terminate or curtail their health insurance coverage will prove to be justified, cannot now be determined. In this respect the present case differs significantly from Defiance Milk Prods. Co. v Du Mond (309 NY 537), relied on by plaintiffs. In Defiance the challenge to the statute was mounted after it had been in effect for more than 30 years and when the court could say, based on practical experience, that the regulation requiring sales of evaporated milk in no less than 10-pound containers accomplished an exclusion of the product from sale within the State because "the minimum quantity so specified is many times larger than could or would be sold and purchased in a retail food shop” (309 NY 537, 540). Whatever may be plaintiffs’ anticipation, in no way may the statute here in question —which in terms prohibits nothing — now be regarded as a prohibition on the sale of a nondeleterious product, as in fact could the statute in the Defiance case.
Plaintiffs’ argument that there is a fatal defect in the legislation because its result will be to impose a part of the cost of maternity care coverage, through increased premiums occasioned by such coverage, on purchasers of health insurance policies who do not want, or do not need, protection against the expenses of childbirth is refuted by the concept— basic to insurance — of risk sharing, a factor consciously taken into account when the legislation was fashioned. Additionally, the extent to which the cost of maternity care coverage falls on a particular group — as, for instance, the elderly — is determined by the manner in which the cost of the benefits is allocated among the insureds, a subject as to which no provision was included in the legislation and which was therefore left for initial address by the insurers in preparing and seeking approval of premium rate schedules.
Totally without merit as a basis for invalidating chapter 843 *312 is plaintiffs’ argument that "The effect of the new law is to require the entire burden to be borne by the existing health insurance system; persons who do not happen to have health insurance are wholly exempt from bearing the burden of maternity coverage”. The principle incorporated in this self-evident statement is equally applicable to any type of insurance — thus, the entire burden of automobile liability coverage is borne by the existing automobile liability system; persons who do not happen to have such insurance are exempt from bearing the burden of liability coverage. That fact, however, does not present any basis for invalidating the mandated coverage.
Nor is there merit to plaintiffs’ contention that they are being compelled to enter a different and more hazardous business than that in which they choose to be engaged. The determination by Special Term that the statute does not require insurers to enter into a new business but merely to include a health care expense not previously covered is sound and provides a valid basis for distinguishing Hartford Acc. & Ind. Co. v Ingram (290 NC 457), so strongly relied on by plaintiffs. The statute there under attack did in fact require general liability insurance carriers to add a new coverage (malpractice insurance) to their offerings. While the question might be regarded as one of degree, we perceive the extension from general liability to malpractice insurance to be both substantially greater in degree and different in kind from the inclusion of maternity care coverage within that of hospital and medical expenses for illness and disease; the comparison here is closer to the home health care provisions required to be included in accident and sickness policies by subdivisions 7-f to 7-j of section 164 of the Insurance Law.
Finally, concluding that plaintiffs have failed to establish that section 843 of the Laws of 1976 is unfair, unjust or arbitrary and thus a deprivation of due process, we note, in response to plaintiffs’ assertion that other — and in their view, better — means could have been found to meet the objective of making maternity care coverage widely available, that the choice of means was within the legislative prerogative; its wisdom in exercising its discriminating authority, absent an unconstitutional selection, is beyond the scope of judicial review (Montgomery v Daniels, 38 NY2d 41, 56, supra).
Turning to plaintiffs’ second cause of action on which judgment has been granted in their favor declaring that *313 chapter 843 may not, consonant with constitutional restrictions on impairment of obligations of contract, modify policies issued by plaintiffs as guaranteed renewable policies (those issued before the effective date of the statute which, though the premiums might be increased, plaintiffs have no choice but to renew at the option of the other party to the insurance contract), we agree with the determination by the courts below (Moore v Metropolitan Life Ins. Co., 33 NY2d 304). The holding in Moore (p 312) that "Where * * * the insurer does not have the right to terminate the policy or change the premium rate without consent of the [insured], renewal, by the payment of premiums merely continues in force the preexisting policy, and statutes enacted subsequent to its original enactment cannot be applied” is dispositive of this cause of action (cf. Char-Mo Investors v Market Ins. Co., 44 NY2d 793). Defendant’s reliance on the existence of a right in the insurers to increase premiums on provision of maternity care coverage as sufficient to satisfy the requirements set forth in Moore as prerequisite to the validity of statutory modification of insurance contracts is misplaced. What is required is a choice open to the insurer to increase premiums or in the alternative, if it so elects, to terminate — thus, fail to renew— the policy and escape the added risk imposed by the statutory modification; the right to increase premiums alone is not sufficient (Mulligan v Travelers Ins. Co., 280 App Div 764, affd 306 NY 805).
Defendant’s attempt to justify and to uphold the impairment of contract rights and obligations, which would be impermissible under Moore if chapter 843 were given effect with respect to guaranteed renewable policies, is not persuasive. Cases such as Home Bldg. & Loan Assn. v Blaisdell (290 US 398), cited by defendant, in which a compelling public interest, in face of what amounts to an economic emergency of broad scope and ramification, takes precedence over individual contract rights occur but infrequently. Only on rare occasions and in extreme circumstances do rights fixed by the terms of a contract willingly entered into give way to a greater public need (cf. Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth., 44 NY2d 101; United States Trust Co. v New Jersey, 431 US 1). In the present case, while there was a genuine, identifiable public purpose to be served by the enactment of chapter 843, the predicament which spawned the legislation had not risen to the magnitude of a crisis which *314 warranted overriding the terms of the agreements entered into by the parties to the guaranteed renewable health and accident policies.
For the reasons stated, the order of the Appellate Division should be affirmed, without costs, except that on defendant’s appeal the third cause of action should be deemed severed and his appeal with respect thereto dismissed for nonfinality.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
On plaintiffs’ appeal: Order, insofar as appealed from, affirmed, without costs.
On defendant’s cross appeal: Cross appeal, from so much of the Appellate Division order as affirmed the denial of defendant’s motion for summary judgment with respect to plaintiffs’ third cause of action, dismissed upon the ground that such portion of the order appealed from does not finally determine the action within the meaning of the Constitution; order otherwise affirmed, without costs.

. The new section 162-a, applicable to group or blanket accident and health policies, provided: "Every policy subject to the provisions of section one hundred sixty-two which provides hospital, surgical or medical coverage shall provide coverage for maternity care, including hospital, surgical or medical care to the same extent that hospital, surgical or medical coverage is provided for illness or disease under the *307 policy, provided, however, that such maternity care coverage, other than coverage for complications of pregnancy, may be limited to reimbursement of covered expenses for maternity care for a period of four days of hospital confinement. Maternity care coverage may also be limited to those persons covered under the policy for a period of ten months, or for a lesser period if the pregnancy commenced while the insured was covered by the policy. The requirements of this section shall not be applicable, however, to any policies which have been or shall be issued to any 'government’ or 'public employer’, as those terms are defined in paragraph a of subdivision six of section two hundred one of the civil service law.”
Similar provision was made in section 164-a with respect to individual accident and sickness policies and in subdivision 1-a of section 253 with respect to contracts issued by hospital service and other nonprofit corporations.

. The reality of the need is documented by statistics included in the record disclosing increases of 50% in some hospital maternity room rates in the four years immediately preceding enactment of the statute, such that medical expenses incident to the birth of a child were reaching and exceeding a figure of $2,000; availability of maternity care insurance, on the other hand, was quite limited and, when available, benefits usually amounted to only a small part of the costs customarily incurred. A report issued in 1974 by the Senate Task Force on Critical Problems stated that the average family was not able to accumulate by savings in the months preceding delivery the funds necessary to meet the expenses of childbirth.

. In People v Formosa (131 NY 478, supra) in reviewing an attack on a statute regulating the conduct of the life insurance industry, after discussing the authority of the Legislature under the police power, the court stated at pages 483 and 484: "We have no occasion now to specify to what extent [the police power] might reach, or in any way to place upon it its proper limitations, because, in order to justify the act in question, it is not necessary to resort to that power. * * * The power exercised over these insurance companies and their agents is similar to that exercised by the legislature over banks and railway corporations; and it has never been doubted that such power exists, and the legislative power to regulate them and their agents in the minutest particular in the interest of the public, has never been questioned.” (See, also, Merchants Liab. Co. v Smart, 267 US 126, 129.)