DANIEL DANZIG et al., Appellants, v MICHAEL DIKMAN, as President of the Queens County Bar Association, et al., Respondents.

First Department, December 23, 1980

APPEARANCES OF COUNSEL

*Richard A. Danzig* of counsel *(Douglas J. Danzig* with him on the brief; *Fanelli, Moore, Bosco, Penzel & McMillan* and *Wender, Murase & White*, attorneys), for appellants.

*John F. Mulholland* of counsel *(Mulholland, Minion, Roe & Clifford*, attorneys), for Paine Ward Agency No. 3, Inc., respondent.

*Jerrold I. Ehrlich* for Blue Cross and Blue Shield of Greater New York, respondent.

*Lincoln D. Harkow* of counsel *(Frey & Harkow*, attorneys), for Michael Dikman and others, respondents.

OPINION OF THE COURT

LUPIANO, J.

Defendant Blue Cross and Blue Shield of Greater New York (hereinafter Blue Cross) issued a "Group Contract"

to defendants, the Queens County Bar Association and the Nassau County Bar Association, the "Contract Holder". Plaintiff Daniel Danzig, a member in good standing of the Queens County Bar Association, applied for medical insurance under this group contract for himself (and for his spouse, plaintiff Ida Danzig, as a family member). Concomitant with plaintiff Daniel Danzig's endeavoring to enroll and become a subscriber to this group insurance, he received a booklet from the Queens County Bar Association, entitled "Blue Cross and Blue Shield and Major Medical Health Protection Program", which set forth the benefits of the policy which could be purchased at that time from Blue Cross through the association. The booklet, under the section entitled "Major Medical Benefits", provides (at p 27) that "Covered Services" include "Private Duty Nursing Service performed by a registered graduate nurse (RN) or a registered practical nurse, when the attending physician certifies that the service is needed." The booklet, further provides (at p 26) that after the deductible ($100) is met, during each benefit period, "Major Medical Benefits then apply" and Major Medical will then pay "80% of Covered Expenses up to a maximum allowance of $50,000" with "[t]he lifetime maximum" being "unlimited."

Several years ago, and while a subscriber to the medical insurance provided through the Bar Association, as aforesaid, plaintiff Daniel Danzig suffered a massive stroke requiring that he have daily nursing care. Defendant Blue Cross, pursuant to the terms of the policy subscribed to by said plaintiff (which, in pertinent part, specifically provided that there was no lifetime maximum for private-duty nursing services) granted plaintiff Daniel Danzig private-duty nursing benefits to the extent of 80% of the expense incurred in connection with such daily nursing care, after application of the $100 deductible, during each benefit period, up to September 1, 1978. It is asserted by counsel for Blue Cross that in consequence of general increases in the cost of health care covered under the group contract, Blue Cross was substantially increasing the premium for the contract year to commence September 1, 1978. He further stated that in order to avoid this increase, the parties to the group contract (the Bar Associations and

Blue Cross) negotiated modification of that contract to take effect on September 1, 1978. Insofar as here pertinent, the benefits for private-duty nursing were substantially affected by the modification, in that the contract, as amended, effective September 1, 1978, provided that a lifetime maximum of $5,000 was available for private-duty nursing care in place of the prior unlimited lifetime maximum.

It is admitted by Blue Cross' counsel that as a benefit period had commenced on March 18, 1978 (prior to the modification) for Mr. Danzig, Blue Cross continued to pay benefits for private-duty nursing care to him until the benefit period ended on March 17, 1979, whereupon Blue Cross commenced paying benefits under the modification until the maximum amount of $5,000 was disbursed. No further payments for the daily private-duty nursing care required by Mr. Danzig will be forthcoming, according to Blue Cross.

Plaintiffs commenced the instant action seeking, *inter alia*, a declaration of their rights under the group policy. All defendants subsequently moved for partial summary judgment dismissing the first two causes of action of the amended complaint. The first cause of action against all defendants, in essence, alleges that the consent of the plaintiffs to the modification respecting nursing services was not obtained, which consent was required because plaintiffs' right to such benefits had vested. Injunctive, or, in the alternative, declaratory relief, is requested. The second cause of action against all defendants alleges breach of contract in their failure to provide private-duty nursing benefits to Mr. Danzig. Trial Term granted the defendants' motions to the extent of dismissing the first and second causes of action and severing same from the third and fourth causes of action remaining in the complaint. We have determined to modify to the extent of declaring the rights of the parties under the group contract in this controversy.

The critical issue is not whether the parties to the group contract can enter into a modification of that contract, but whether such modification is binding upon plaintiffs, provided plaintiffs have theretofore obtained a vested right

under the contract (which right is affected by that modification) without obtaining the consent of plaintiffs to such modification.

Plaintiff Daniel Danzig is presently 70 years of age. His wife unequivocally states that based upon the representation in the booklet above referred to, they subscribed to the policy and would not have done so if the policy permitted Blue Cross to terminate benefits at the end of any benefit period.

The group contract issued by Blue Cross to the Queens and Nassau County Bar Associations, set forth in the report, states that "[i]n consideration of the application * * * and of the payment of charges as provided in Article V hereof, AHS and UMS agree to provide benefits under the terms of this Contract * * * for a period of One Year * * * and for like Contract Periods thereafter, unless this Contract is terminated as provided herein." Subdivision D of article V provides that "[t]he Subscription Charges for any Contract Period subsequent to the first Contract Period may be changed by AHS or UMS by giving written notice of such change to the Contract Holder at least 30 days prior to the commencement of such Contract Period." No reference to the power to modify is set forth in the group contract. However, such contract in article VI, entitled "Termination", grants to the parties (the contract holder or AHS or UMS) the option to terminate at the end of any "Contract Period" by the giving of at least 30 days' prior written notice to the other. The power to modify is implicit from the power to terminate, in that the effect of a modification is the production of a new contract (see *Walker v Millard*, 29 NY 375; 10 NY Jur, Contracts, § 406).

Study of the group contract discloses that it may be construed to mean that the contingent event which would give rise to Blue Cross' duty of performance under the agreement is the illness or injury of the subscriber, as well as that the contingent event is the medical services rendered to the subscriber. The group contract provides benefits for services, care or supplies "when necessary for and consistent with the treatment of the Subscriber's injury or illness". It also provides for coverage for "a pre-existing

condition" under stated circumstances, such condition being described as "(a) any condition, disease or ailment which existed on the date the Subscriber became covered under this Contract, or (b) any condition, disease or ailment for which the Subscriber·received medical or surgical treatment or advice within one year prior to such date, or (c) any complication of any such condition, disease or ailment".

Where the health insurance contract, or the medical or hospital service contract is susceptible of different reasonable constructions (i.e., it is ambiguous) the ordinary rule that an insurance policy be strictly construed against the insurer applies (see *Janneck v Metropolitan Life Ins. Co.*, 162 NY 574; see, also, 43 Am Jur 2d, Insurance, § 277; 29 NY Jur, Insurance, §§ 594, 596; *Myers v Kitsap Physicians Serv.*, 78 Wn 2d 286, 294). A fairly analogous situation to the instant matter was presented in *Myers v Kitsap Physicians Serv. (supra)*. In that case, the plaintiff, subsequent to obtaining coverage under a health care service contract, suffered a chronic kidney disorder necessitating hospital hemodialysis treatments. In order to avoid·an arbitration determination and a court determination which concluded that the hemodialysis treatments were covered under the health care contract, the defendant health care service contractor modified the health care contract during December, 1966, effective February 1, 1967, to exclude chronic kidney disorder treatments from coverage. The requisite premium payments were continually made. While the trial court and intermediate appellate courts viewed the group contract as requiring the health care contractor to pay only for medical services actually rendered during a contract year, and held that the contractor had an absolute right to modify, the highest appellate court of the State of Washington *en banc* (seven Justices) unanimously reversed and declared in favor of the plaintiff. They stated (pp 288-290), in pertinent part: "our law is clear in holding that ambiguities in an insurance contract must be interpreted in the light most favorable to the insured * * * and that the language of an insurance contract should in fact 'be interpreted in accordance with the way it would be understood by the average man purchasing insurance' * * * we therefore conclude that the contract before us, when con-

sidered for the purpose of granting or rejecting plaintiff's claim for hemodialysis hospitalization benefits after February 1, 1967, may reasonably be given more than one interpretation. Although the contract is a health service contract, one reasonable interpretation of its provisions would be grounded on the same legal principle applied generally in cases relating to health and accident insurance policies, *i.e.*, that plaintiff's rights under the contract became vested when medical treatment became necessary. Those rights being vested, the subsequent termination of the policy which created the right did not terminate the vested right of the plaintiff to payment of services rendered and to be rendered".

"A valid cancellation or modification of a group policy * * * does not have the effect of releasing the insurer from liability which accrued prior thereto by reason of the happening of the contingency insured against. In other words, once liability has attached under a group policy—that is, after the happening of the event insured against—cancellation or modification of the master policy is ineffective to preclude recovery by the [subscriber] or his beneficiary as provided by the original policy". (Group Policy-Coverage-Termination, Ann. 68 ALR2d 249, 278-279). There is no express provision in the group contract at issue herein to the contrary, and the subscriber, Mr. Danzig, and his beneficiary, Ida Danzig, have not expressly consented to the modification. To reiterate: "[I]nsurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import" *(Janneck v Metropolitan Life Ins. Co., supra,* at pp 577-578).

*Cassedy v Connecticut Gen. Life Ins. Co.* (60 Misc 2d 720, revg 56 Misc 2d 970), relied on by Blue Cross, is inapposite because the modification therein was clearly accomplished *before* liability under the policy attached.

Accordingly, it is concluded that upon examining the terms of the group contract as a whole, and in conjunction

with the terms of the booklet distributed to this subscriber (plaintiff Daniel Danzig), and mindful of the rules of construction alluded to above (see *Little v Blue Cross of Western* N.Y., 72 AD2d 200, 203), the modification changing the lifetime maximum for expenses for private-duty nursing care from "unlimited" to $5,000 is ineffective as against plaintiffs under the circumstances herein with respect to the disabling illness and condition of Daniel Danzig. Parenthetically, the existence of a lifetime maximum (whether limited or unlimited) discloses an awareness on the part of the insurer and all interested parties that an illness or condition might well continue indefinitely beyond any one contract term and, indeed, persist for the lifetime of an individual subscriber or his or her beneficiary.

The order of the Supreme Court, New York County (I. RUBIN, J.), entered March 20, 1980, which, *inter alia*, granted the defendants' motions for partial summary judgment to the extent of dismissing the first and second causes of action of plaintiffs' amended complaint, should be modified, on the law, to the extent of declaring that the September 1, 1978 modification to the group contract providing a lifetime maximum of $5,000 for private-duty nursing care in place of the prior unlimited lifetime maximum, is ineffective as against plaintiffs with respect to the disabling illness and condition of plaintiff Daniel Danzig requiring that he have daily nursing care and, as so unanimously modified, the order should be affirmed, without costs and disbursements.

KUPFERMAN, J. P., BIRNS, FEIN and SANDLER, JJ., concur.

Order, Supreme Court, New York County, entered on March 20, 1980, modified, on the law, to the extent of declaring that the September 1, 1978 modification to the group contract providing a lifetime maximum of $5,000 for private-duty nursing care in place of the prior unlimited lifetime maximum, is ineffective as against plaintiffs with respect to the disabling illness and condition of plaintiff Daniel Danzig requiring that he have daily nursing care and, as so modified, the order is affirmed, without costs and without disbursements.