Jeraldine CRUM–VANLANDINGHAM, Plaintiff-Appellant,

v.

BLUE CROSS HEALTH SERVICES, INC. and Missouri Medical Service, Defendants-Respondents.

No. 52449.

Missouri Court of Appeals, Eastern District, Division Two.

July 28, 1987.

---

Theodore H. Hoffman, St. Louis, for plaintiff-appellant.

Martin J. Toft, St. Louis, for defendants-respondents.

DOWD, Judge.

Plaintiff, Jeraldine Crum-Vanlandingham (daughter of June Crum and conservator of her estate), appeals from the judgment of the trial court which found for defendants, Blue Cross Health Services, Inc. and Missouri Medical Service (Blue Cross), on plaintiff's petition for a declaratory judgment filed as a result of defendants' refusal to make payment for medical expenses incurred by June Crum while a member of a group health plan issued by defendants. We reverse.

The case was submitted on stipulated facts which are as follows. On April 30, 1978, June Crum became a member of the J. Louis Crum Group Health Plan issued by respondents to J. Louis Crum Corporation (Crum Corporation). June Crum is the widow of the former president of Crum Corporation and was not an employee of the corporation. As of May 1, 1982, group coverage was provided under the Comprehensive Package (Com-Pac) Program offered by respondents. A Com-Pac brochure, intended to summarize the Com-Pac benefits for members of the group plan, was given to June Crum. According to the brochure, copies of the master contract were to be kept at the employer's office and at the Blue Cross/Blue Shield office and were to be available for inspection during regular working hours.

During the summer of 1982, June Crum became inflicted with a permanent and progressively disabling neurological disorder which has required in-home private duty nursing care since May, 1984.

On June 3, 1983, June Crum became 65 years of age and was therefore, eligible for Medicare. Upon eligibility, June Crum was converted to a Medicare supplementary program pursuant to the master contract and brochure. The master contract states as follows:

If any participant is, or becomes eligible to enroll under Medicare ... whether or not such participant chooses to enroll, his right to hospital care hereunder terminates automatically and without notice. ...

If this Certificate or any coverage hereunder is terminated by reason of a participant's becoming eligible to enroll under Medicare, such participant will automatically be converted to a membership in BCHS which is a supplement to Medicare. ...

The brochure, which the members receive, similarly states:

Shortly before you or your spouse becomes 65, or if someone on your membership is eligible for Medicare due to disability, contact the local Social Security office to establish Medicare eligibility and then contact the Blue Cross and Blue Shield office about changing your membership to a special program to complement Medicare.

In August, 1983, the law firm representing June Crum submitted an application on her behalf for a direct pay senior Medicare supplementary membership. An individual membership was issued and she was billed directly for the premiums. In September, 1983, June Crum was reinstated in the group plan at the request of her lawyer with the consequence being that she was still enrolled in the Medicare supplementary program but the corporation was responsible for the premiums. She was still a member of the group at the time this case was submitted to the trial court.

The supplementary plan provides coverage for twenty percent of the expenses in excess of Medicare payments for Medicare approved expenses [1] and maintains a $10,000.00 lifetime maximum amount. By contrast, the Com-Pac program maintains a $1,000,000.00 lifetime maximum amount.

---

1. Private duty nursing is not an expense approved by Medicare.

The brochure distributed to members contains the following provisions:

> In case of serious illness or accident, the benefits are provided up to the program maximum, per person, *during a lifetime.* (emphasis added).
>
> LIFETIME MAXIMUM:
>
> $1,000,000 PER PERSON
>
> As a Blue Cross and Blue Shield member, you will never lose your protection because of old age or illness. You will never be dropped when you need help most because you are a "bad risk."
>
> You are not dropped because of advancing age, poor health or the number of times you use your benefits.

The medical expenses incurred by June Crum as a result of her neurological disorder were submitted to Blue Cross for payment which was refused. Blue Cross maintains that June Crum is entitled to only those benefits allowed under the supplementary program since she is no longer covered by the Com-Pac program due to her Medicare eligibility and conversion to the supplementary program. Blue Cross contends the medical expenses were incurred subsequent to the conversion and thus, are not covered by Com-Pac. The major medical portion of the master contract provides as follows:

> The provisions hereunder apply only to expenses incurred while the Participant is covered hereunder.
>
> An expense or charge shall be deemed incurred as of the date the Service is rendered or purchase is made from which the expense or charge arises.

Appellant contends, however, there is an ambiguity in the contract in that the brochure provides for a $1,000,000.00 *lifetime* maximum but yet the master contract converts the member to a supplementary program, which has a $10,000.00 lifetime maximum, upon reaching eligibility for Medicare and that such an ambiguity should be construed against the insurer. Appellant contends that any illness which had its onset during the time June Crum was covered by Com-Pac should be covered under the $1,000,000.00 lifetime maximum, even after the automatic conversion to the Medicare supplementary program.

The issue was presented on stipulated facts to the trial court which found no ambiguity in the contract. In its Order and Judgment, the trial court held that June Crum's coverage under the Com-Pac program terminated on June 3, 1983, and that Blue Cross is not liable for any payments under the Com-Pac plan after that date.

Appellant raises two points on appeal: (1) The trial court erred in its finding that no ambiguity existed; and (2) The trial court erred in holding respondents not liable for payments after June 3, 1983, in that respondents are liable for "payment of medical benefits for all treatment rendered to June Crum necessitated by an illness with its onset prior to June 3, 1983."

Our standard of review in a court tried case based on stipulated facts is that enunciated in *Schroeder v. Horack*, 592 S.W.2d 742 (Mo. banc 1979). "[T]he only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated." *Schroeder, supra*, at 744 (quoting *Drysdale v. Cornerstone Bank*, 562 S.W.2d 182, 183 (Mo.App.1978)).

The question on appeal is whether the group insurance policy, as issued by respondents, affords coverage to a policy holder for expenses incurred as a result of a neurological disorder which developed prior to the conversion to a supplementary program, but which expenses are incurred subsequent to the conversion. The pivotal issue is whether an ambiguity exists in the contract for if it does, it is well-established that an ambiguity is to be construed against the insurer. *Behr v. Blue Cross Hosp. Serv., Inc.*, 715 S.W.2d 251, 256 (Mo. banc 1986). We therefore address the issue of the existence of an ambiguity in light of our standard of review.

The documents before the court include the master Com-Pac contract, the Com-Pac brochure issued to June Crum, and the Medicare supplemental membership certificates. To be decided is whether the Com-Pac brochure, as given to June Crum, is to be considered a part of the insurance contract.

"This court has recently held that such an offering [booklet] or descriptive brochure constitutes a part of the insuring agreement." *Morris v. Travelers Ins. Co.,* 546 S.W.2d 477, 486 (Mo.App.1976). Where a brochure contains provisions found nowhere else which are essential to a complete contract, the brochure constitutes a part of the insuring agreement and its provisions are afforded contractual force. *Behr, supra,* at 254–55; *Lutsky v. Blue Cross Hosp. Serv., Inc.,* 695 S.W.2d 870, 873 (Mo. banc 1985).

The brochure represents that the insureds are covered up to a *lifetime* maximum of $1,000,000.00 in the case of a serious illness or accident and that an insured will not be dropped due to "advancing age." No such provision or language is found in the master contract; it refers only to a program maximum per person. It is apparent then that the brochure contains provisions essential to a complete contract and thus, the brochure constitutes a part of the insurance contract.

Appellant contends in his first point the trial court erred in not finding an ambiguity. When the master contract and the brochure are read in conjunction, we find an obvious ambiguity. "If a contract promises something at one point and takes it away at another, there is an ambiguity." *Lutsky, supra,* at 875. The ambiguity is patent and is to be resolved within the four corners of the contract. *Id.* The insurance contract promises the insured a *lifetime* maximum of $1,000,000.00 in case of a serious illness and then takes it away by terminating the coverage upon conversion to a Medicare supplementary program, typically at 65.

Respondents contend the contract is not ambiguous because both the master contract and the brochure provide for termination upon eligibility for Medicare. Respondents' contention ignores the inconsistency of the brochure in containing a *lifetime* coverage provision and a termination upon eligibility for Medicare provision.

We find that an ambiguity exists and reverse the trial court's determination that no ambiguity is present.

■ Appellant contends in her second point Blue Cross is liable for expenses arising from her neurological disorder.

"It is widely held that insurance contracts are to be construed strictly against the insurer and that any ambiguity is to be resolved in favor of the persons insured." *Lutsky, supra,* at 874 (footnote omitted).

We are therefore inclined to agree with appellant that Blue Cross' liability under Com-Pac extends beyond conversion to the supplementary program for those illnesses which had their onset prior to the conversion. Respondents contend they are liable only for those expenses incurred while the Com-Pac program was in effect. As in *Lutsky,* "[i]f the defendants are correct, then the provision for $1,000,000.00 lifetime benefits per person is illusory to the point of being positively deceptive." *Lutsky, supra,* at 874. There would be no lifetime protection against catastrophic illnesses for those persons who became eligible for Medicare while suffering from an existing illness.

We therefore conclude that, under the insurance contract before this court, a limit below $1,000,000.00 may not be imposed against benefits available for an illness having its inception while the Com-Pac program and the $1,000,000.00 limitation was in effect.

Respondents assert under both points that June Crum terminated her coverage under the Com-Pac program when her representative requested that she be converted to the Medicare supplementary program and thus, the court "must still consider the practical construction placed on the contract by the acts and conduct of the parties." Although June Crum's membership was converted, she did not terminate her membership or withdraw from the overall program. Plaintiff does not contend that her mother would be entitled to coverage under the Com-Pac program for illnesses which had their onset subsequent to her conversion to the Medicare supplementary program. The act of conversion appears to have affected only future illnesses and we are not persuaded that the "conduct of the

parties" operated as a release for expenses relating to the already existing illness.

We therefore remand to the trial court with instructions that an order be entered holding respondents liable for expenses which are incurred by June Crum as a result of her illness which had its onset prior to the conversion to the Medicare supplementary program and which are payable under the provisions of the Com-Pac program.

Reversed and remanded.

SMITH, P.J., and REINHARD, J., concur.