953 F.2d 1386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Grayce AUL, Individually and as representative of AUL Pipe &
Tubing, Inc. Employee Welfare Benefit Plan,
Plaintiff-Appellant,
v.
ALLSTATE LIFE INSURANCE COMPANY and Old Kent Bank as Trustee
of the First Insurance Trust, Defendant-Appellee.
 No. 90-56145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1991.
Decided Jan. 22, 1992.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Grayce Aul appeals from the district court's grant of summary judgment to Appellee Allstate in Aul's suit to obtain continuing medical benefits under a policy terminated by Allstate. The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). This court has jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 * As a preliminary matter, there is some dispute among the parties as to what law applies. Aul would have this court apply California law, while Allstate would have it apply Illinois law. We reject both positions. In Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990), this court held that the interpretation of ERISA insurance policies is governed by a "uniform federal common law." In developing a federal common law to govern ERISA suits, federal courts should borrow "from state law where appropriate, and [be] guided by the policies expressed in ERISA and other federal labor laws." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1502 (9th Cir.1985).
 
 II
 
 4
 This court reviews a district court's grant of summary judgment de novo. International Brotherhood of Electrical Workers, Local 47 v. Southern Cal. Edison Co., 880 F.2d 104, 105 (9th Cir.1989). In doing so, it must determine whether, viewing the evidence in the light most favorable to the party against whom summary judgment has been granted, there is any issue of material fact and whether the moving party is entitled to judgment as a matter of law. Arizona Laborers Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1513, 1515 (9th Cir.1985). "When the meaning of an agreement is ambiguous on its face and contrary inferences as to intent are possible, an issue of material fact exists for which summary judgment ordinarily is inappropriate." International Brotherhood of Electrical Workers, 880 F.2d at 107 (citing Arizona Laborers, 753 F.2d at 1517-18).
 
 III
 
 5
 In determining whether or not an insurance contract is ambiguous, this court will interpret its terms " 'in an ordinary and popular sense as would a [person] of average intelligence and experience.' " Evans, 916 F.2d at 1441 (quoting Allstate Insurance Co. v. Ellison, 757 F.2d 1042, 1044 (9th Cir.1985)). The court should "examine[ ] the contract as a whole and if, on the face of the contract, two reasonable and fair interpretations are possible, an ambiguity exists." Evanston Insurance Company v. Fred A. Tucker & Co. Inc., 872 F.2d 278, 279 (9th Cir.1979). The court will " 'not create ambiguity where none exists.' " Evans, 916 F.2d at 1441. And if " 'a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy.' " Id.
 
 
 6
 There is no doubt that there is a reasonable interpretation of the Policy that favors Allstate. The Policy includes a broad description of the expenses it covers that cannot be interpreted to include expenses incurred after the Policy is terminated. It states: "The Medical Benefit is paid for Eligible Expense [sic] incurred for an Injury or Sickness while insured." And it defines an "Eligible Expense" as an expense "incurred for an Injury or Sickness while insured." [ER 45-46]. We are not persuaded by Aul's suggestion that in both instances "while insured" refers to "Injury or Sickness"; we think it is clear enough that "while insured" refers to "Eligible Expense." Both provisions plainly refer to expenses incurred while insured, not expenses arising from a sickness incurred while insured. This reading is supported by the clause providing that an " 'Expense' is deemed incurred on the date the service or supply is furnished." [ER 55]. If the Policy covered expenses incurred after termination, there would be no reason to specify the date on which an expense is incurred.
 
 
 7
 This interpretation is consistent with the Policy's "EXTENSION OF BENEFITS" provision. That provision sets forth limited circumstances under which a person may obtain benefits under the Policy even though the policy has been terminated. It states that Allstate will pay the Medical Benefit after the person's insurance ends if the person is totally disabled at the time the Policy is terminated and at the time the expense is incurred, the expense is directly related to the disability, and the expense is incurred within one year of the termination. [ER 48] If, as Aul claims, the Policy vested benefits, there would be no reason to include the "EXTENSION" provision because every expense it covers would be covered by vesting. In other words, the provision would be superfluous.
 
 
 8
 Aul, while conceding that there would be some overlap between the "EXTENSION" provision and vesting, argues that the provision would not be rendered entirely superfluous by vesting because there is a narrow category of injuries that would not become vested but would be subject to the "EXTENSION" provision. Aul's argument, however, merely begs the question of why, if it were Allstate's purpose to extend benefits for expenses not covered by vesting, it did not write the provision so that it just covered those expenses instead of writing a provision so broad that it overlapped with vesting. It also begs the question of why Allstate would expressly provide coverage for this narrow category of injuries but not expressly provide for vesting. The reasonable interpretation of the Policy is that the "EXTENSION OF BENEFITS" provision entirely defines the insured's rights to benefits after the Policy has been terminated.
 
 
 9
 Considered together, these provisions would appear to preclude vesting. But Aul points to other aspects of the Policy that she claims vested her rights to benefits for any illness she contracted prior to the termination of the Policy. At the very least, she argues, these provisions cast doubt over those provisions of the Policy that preclude vesting, creating an ambiguity.
 
 
 10
 The first provision to which Aul points is contained in the Certificate of Coverage. The Certificate sets forth the maximum benefit the insured may receive under the Policy's schedule of benefits. At the time Allstate terminated the Policy, the schedule of benefits provided: "MEDICAL MAXIMUM": $1,000,000 DURING AN INSURED PERSON'S LIFETIME." Aul argues that "[a] reasonable interpretation of the Certificate is that if an insured contracts an illness while the Policy is in force, he or she has a right to lifetime benefits, regardless of what Allstate does with the Policy thereafter." Aul directs our attention to several state court decisions that have held that a policy's use of the phrase "lifetime maximum" either vests the insured's benefits or at least creates an ambiguity in a policy that elsewhere purports to limit benefits. See Crum-Vanlandingham v. Blue Cross Health Services, 734 S.W.2d 266 (Mo.Ct.App.1987); Fields v. Blue Shield of California, 209 Cal.Rptr. 781 (Cal.Ct.App.1985); Danzig v. Dickman, 434 N.Y.S.2d 217 (1980).
 
 
 11
 We decline to follow these courts and instead adopt the position of the Minnesota Court of Appeals in Sonneman v. Blue Cross and Blue Shield of Minnesota, 403 N.W.2d 701 (Minn.Ct.App.1987). That court held that use of the term "lifetime" does not manifest any intention to vest the insured's benefits. Like Aul's Policy, the policy at issue in Sonneman contained an "Extended Coverage" provision. The Minnesota court concluded that at least where a Policy contains such a provision, interpreting the term "lifetime" to vest the insured's rights would be unreasonable because it would render the "Extended Coverage Provision" superfluous. See id. at 706. We agree.
 
 
 12
 At oral argument, Allstate offered a plausible reason for its use of the word "lifetime." It explained that if a person leaves the plan and later returns, she does not start with a fresh benefits package; the benefits available to her are whatever is left of the $1,000,000 she had the first time around. This explains why the language "DURING AN INSURED'S LIFETIME" appears in the amended Certificate, with the $1,000,000 maximum, but not in the original Certificate, which provided for an "UNLIMITED" maximum; the word "lifetime" could in no way limit an "unlimited" benefit.
 
 
 13
 Aul also argues that the "LIMITATIONS" section of the Policy implies the vesting of benefits for sicknesses incurred while the Policy is in force. That section sets forth twenty-one types of injury and medical care the Policy does not cover. And while "pre-existing" conditions are among these "LIMITATIONS," post-termination expenses incurred for sickness or injury contracted during the lifetime of the Policy are not. Aul argues that if Allstate intended to preclude vesting, post-termination expenses would have been listed among the "LIMITATIONS." The argument is not without merit, but the omission of post-termination expenses does not create an ambiguity because it was unnecessary for Allstate to list those expenses among the "LIMITATIONS." As explained above, the Policy explicitly limits benefits to expenses incurred while the Policy is in effect, and the "EXTENSION" provision defines the sole exception to that general rule. Those provisions render a vesting limitation superfluous. Consistent with this analysis, each of the express "LIMITATIONS" refers to an expense incurred while the policy is in effect. [See ER 49-50].
 
 
 14
 Finally, Aul points to the provision in the section of the Policy entitled "TERMINATION OF INSURANCE." It states: "The end of insurance will not affect any claim made for a loss that took place while the insurance was in force." [ER 38 (emphasis added) ]. Aul concludes that "loss" must refer to a sickness or injury that occurred while the policy was in effect. But Allstate responds that "loss" refers not to sickness but to "eligible expense." Read in isolation, "loss" could reasonably refer to either "sickness" or "expense"; the term is itself ambiguous. But precisely because of its ambiguity, it dose not conflict with the provisions that preclude vesting. Read in light of the Policy's express limitation on the payment of medical benefits and the "EXTENDED COVERAGE" provision, the ambiguity disappears and it becomes clear that "loss" refers to "expense." Thus the "TERMINATION" provision does not conflict with other portions of the Policy and does not render the Policy ambiguous.
 
 IV
 
 15
 Because we conclude that the Policy unambiguously precludes the vesting of benefits, the decision of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3