[613 NYS2d 494]

FIRST UNITED AMERICAN LIFE INSURANCE COMPANY, Appellant,
v SALVATORE R. CURIALE, as Superintendent of Insurance
of the State of New York, et al., Respondents.

Third Department, June 16, 1994

**APPEARANCES OF COUNSEL**

*LeBoeuf, Lamb, Greene & MacRae,* New York City *(Jay G. Safer, Stephen H. Orel* and *Ellen M. Dunn* of counsel), for appellant.

*G. Oliver Koppell, Attorney-General,* Albany *(Deirdre Roney* and *Peter H. Schiff* of counsel), for Salvatore R. Curiale, respondent.

*Hinman, Straub, Pigors & Manning, P. C.,* Albany *(Eileen M. Considine* and *Rosemary Weaver McKenna* of counsel), for New York State Conference of Blue Cross and Blue Shield Plans, intervenor-respondent.

**OPINION OF THE COURT**

MERCURE, J.

By this action for a declaratory judgment (originally brought as a CPLR article 78 proceeding), plaintiff, a commercial insurance carrier issuing Medicare supplemental insurance policies in New York, seeks to invalidate two regulations, 11 NYCRR 360.4 (e) and 360.11 (a) (1) (iii) (hereinafter the Regulations), promulgated by defendant Superintendent of Insurance to implement the Open Enrollment and Community Rating Law (L 1992, ch 501 [hereinafter the Law]). Under the Law, all individual and small group health insurance policies, including Medicare supplemental policies, at issue here, must be "community rated", i.e., employing "a rating methodology in which the premium for all persons covered by a policy or contract form is the same based on the experience of the entire pool of risks covered by that policy or contract form without regard to age, sex, health status or occupation" (Insurance Law § 3231 [a]). In implementing the Law, the Legislature required that community rating apply to existing policies in the following manner: (1) new policies and contracts delivered and coverage effectuated in this State on or after the July 17, 1992 effective date of the Law but on or before March 31, 1993 were to have initial rating periods terminating March 31, 1993, so that community rating would apply to such policies, contracts and coverage as of April 1, 1993 (L

1992, ch 501, § 21 [ii]); (2) for existing policies and contracts issued on or after April 1, 1992 but before July 17, 1992, community rating was to apply "at their next renewal rating period" (L 1992, ch 501, § 21 [iii]); and (3) for policies written prior to April 1, 1992, community rating applied as of April 1, 1993 (L 1992, ch 501, § 21 [iv]).

Concerned about the effect of the Law upon existing policies that were guaranteed renewable (policies that, by their terms, may not be terminated or changed by the insurer except with regard to renewal premium), the Regulations were promulgated in order to give insurers a choice: an insurer could cease issuing Medicare supplemental insurance before February 1, 1993, in which case community rating would not apply to its existing guaranteed renewable policies (11 NYCRR 360.4 [e]), or it could continue to issue such coverage on or after February 1, 1993, in which case community rating would apply to the previously issued policies (11 NYCRR 360.11 [a] [1] [iii]). In bringing this action, it was plaintiff's position that, as related to preexisting guaranteed renewable Medicare supplemental insurance policies, the Regulations impermissibly impaired existing contract rights and, to the extent that they distinguish between insurers who are willing to stop issuing policies in New York and those who elect to continue issuing policies, are irrational and violative of legislative intent and equal protection. Rejecting plaintiff's contentions, Supreme Court made a declaration in favor of defendants. Plaintiff now appeals.

Because we agree with Supreme Court that the Regulations, as applied to plaintiff's existing guaranteed renewable Medicare supplemental policies, do not violate the Equal Protection, Due Process or Contract Clauses of the Federal Constitution and are neither arbitrary nor capricious, we affirm. Initially, it is important to recognize that neither the Law nor the Regulations requires plaintiff to offer coverage or to insure against risks different from the coverage offered or risks insured against in the Medicare supplemental policies it previously issued—only the pricing formula has changed. As such, we may distinguish the decisions of the Court of Appeals in *Health Ins. Assn. v Harnett* (44 NY2d 302), which involved the mandatory inclusion of maternity coverage in existing health and accident insurance policies, and *Moore v Metropolitan Life Ins. Co.* (33 NY2d 304), which involved a requirement that subscribers be provided reimbursement for psychological services performed by a psychologist under policies providing

coverage for psychiatric or psychological services performed by a physician or a psychiatrist. Further, the terms of plaintiff's guaranteed renewable policies do not prohibit a change in premium at the time of renewal. To the contrary, the policies make express provision for a change in renewal premiums in accordance with plaintiff's table of premium rates applicable to all policies of the same form and class. Community rating has merely expanded the "class" to "the entire pool of risks covered by [the] policy or contract form without regard to age, sex, health status or occupation" (Insurance Law § 3231 [a]).

Under the circumstances present here, there is no question that the Regulations provide plaintiff with a very real choice *(see, Health Ins. Assn. v Harnett, supra,* at 313). If it is desirous of continuing to issue policies under community rating, it may do so, and premiums for its new and renewed policies will be determined in accordance with the Law. If, on the other hand, plaintiff feels that it cannot generate acceptable revenue under the new rate mechanism or for any reason is unwilling to accept community rating, it is entitled to withdraw from the New York market by ceasing to issue new policies. In that case, existing guaranteed renewable policies will be exempted from the new rate structure and phased out through attrition. This is precisely the choice that withstood a similar constitutional challenge in *Insurers' Action Council v Markman* (490 F Supp 921, *affd* 653 F2d 344). As properly argued by defendants, in this action plaintiff insists upon the right to choose the best from both worlds—to write new policies under community rating and to retain existing policies rated according to the year of issue and age of the policyholder. This is far more than either *Health Ins. Assn. v Harnett (supra)* or *Moore v Metropolitan Life Ins. Co. (supra)* requires.

We are not at all persuaded by plaintiff's argument that the express holdings of *Health Ins. Assn. v Harnett (supra)* and *Moore v Metropolitan Life Ins. Co. (supra)* permit prospective application of the statute only when the requisite choice is granted by the insurance contract itself. The language of *Moore v Metropolitan Life Ins. Co. (supra,* at 312) relied upon by plaintiff, together with the two preceding sentences, is as follows:

"[W]here, as here, an insurer has the absolute right to terminate a policy on its anniversary date or to change the insurance premium rate without the State's consent, the

policy is modified upon renewal of the policy, by operation of law, to include reimbursement for services rendered by psychologists, as provided for by statute.

"Where, however, the insurer does not have the right to terminate the policy or change the premium rate without consent of the State, renewal, by the payment of premiums, merely continues in force the pre-existing policy, and statutes enacted subsequent to its original enactment cannot be applied. *(Mulligan* v. *Travelers Ins. Co.,* 280 App. Div. 764, affd. 306 N. Y. 805.) Thus, we conclude that the element of choice under the contract, granted to the insurer, makes the prospective application of the statute constitutionally permissible. (Cf. *Neblett* v. *Carpenter,* 305 U.S. 297.)"

We take this language to mean only that, in order to survive the constitutional challenge, a choice must exist and in *Moore* the choice was present under the terms of the contract. In fact, in *Neblett v Carpenter (supra),* cited by the Court of Appeals as comparable authority, the choice came not under the terms of the insurance contract but under the approved plan for liquidation of the insolvent insurer that issued the policies in question.

Plaintiff's remaining contentions have been considered and found to lack merit.

MIKOLL, J. P., CREW III, YESAWICH JR. and PETERS, JJ., concur.

Ordered that the judgment is affirmed, without costs.