Shawn COAN, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

No. 94 CV 5638.

United States District Court, E.D. New York.

Jan. 13, 1996.

Molod & Berkowitz, P.C. by Salvatore J. De Santis, Michael Semel, New York City, for Plaintiff.

Chorpenning, Good, Carlet & Garrison, by Michael J. Zaretsky, New York City, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This case arises from a dispute as to whether the defendant, State Farm Mutual Automobile Insurance Company, ("State Farm" or the "defendant") must provide disability insurance benefits to the plaintiff, Shawn Coan ("Coan" or the "plaintiff") after the defendant elected not to renew the plaintiff's policy in accordance with New York state law. Both parties now move for summary judgment as the underlying facts are not in dispute.

*Background*

The plaintiff, Shawn Coan, is a resident of Suffolk County. The defendant, State Farm, is an Illinois Corporation licensed to sell health insurance in the State of New York. On October 3, 1990, the defendant issued to the plaintiff an insurance policy characterized as a "Limited Benefit Hospital–Surgical Policy" under Policy Number H7175390 3232 (the "Policy").

### 1. *The Insurance Policy*

The Policy provides for $1,000,000 in benefits coverage with a $250 deductible for health and medical expenses including disability related charges. The Policy furnishes 80 percent coverage for the first $8,000 in expenses and 100 percent coverage for remaining costs for the balance of the calendar year.

The Policy defines Total Disability or Totally Disabled as the complete incapacity of the Covered Person as the result of an Injury or Sickness:

1. to perform the substantial or material duties of any occupation for pay or profit, or if not employed, to engage in the normal activities of a person of the same age; and

2. which requires the regular care of a Physician other than a Covered Person.

The Policy also lists a variety of circumstances under which the Policy would not be renewed. Specifically relevant to this case, the Policy provides that State Farm may

elect not to renew if the Policy is discontinued based on the prior written approval of the New York State Department of Insurance. In addition, the Policy contains a catch all provision that "coverage may also terminate for reasons other than those stated above."

However, "[a]ny refusal to renew th[e] policy shall be without prejudice to any claim originating while th[e] policy is in force. Such action shall not affect any claim for expenses incurred: (1) while [the] policy is in force; or (2) during a period of time when benefits are extended subject to the Extension and Limitation of Coverage provision."

An "Extension and Limitation of Coverage" may occur in the following circumstances:

> If a Covered Person is Totally Disabled on his/her coverage termination date benefits provided for that Covered Person by this policy and any attached riders will be extended:
>
> 1. for the injury or Sickness which caused the Total Disability;
> 2. during the uninterrupted continuance of the Total Disability; and
> 3. during the twelve months following the Covered Person's coverage termination date.

During the extended coverage the applicable policy and rider provisions, exclusions, exceptions and limitations will be the same as would have applied had coverage not terminated for such Covered Person.

### 2. *The plaintiff's coverage under the Policy*

The parties do not contest that as of October 3, 1990 the plaintiff was covered by the Policy or that on October 19, 1992, Coan sustained severe and permanent injuries rendering him Totally Disabled under the Policy, and therefore entitled to benefits.

Sometime prior to April 3, 1993 the defendant ceased writing new Hospital–Surgical insurance policies and elected not to renew existing policies. This decision was imposed with the written approval of the New York State Department of Insurance and in conformance with the Policy's terms. As a re-

sult, the plaintiff's policy expired on April 3, 1993 at which time Coan was still Totally Disabled.

On March 2, 1993, Jerry O. Lane, the defendant's Regional Vice President, notified the plaintiff by letter that the Policy would not be renewed as of April 3, 1993 at 12:01 a.m. On March 9, 1993, John D. Durham, then the defendant's Regional Life Health Manager, sent Coan a second notice to the same effect. Both letters advised the plaintiff to obtain alternate insurance.

On April 27, 1993, the plaintiff was advised that because he would remain totally disabled beyond April 3, 1993, he would be eligible for additional benefits under the Policy's Extension and Limitation of Coverage provisions discussed above. Accordingly, the plaintiff received benefits for the twelve month period from April 3, 1993 through April 3, 1994. By letter dated April 11, 1994, Coan was advised that the Extension and Limitation of Coverage provision had expired on April 3, 1994. No benefits have been paid since then.

On November 1, 1994, the plaintiff filed this Complaint in New York Supreme Court, Suffolk County. The case was removed to federal court and an Answer was filed on December 14, 1994. The parties then cross moved for summary judgment.

### 3. *The parties arguments*

The plaintiff contends that State Farm is "impermissibly seeking to modify" its insurance contract by refusing to continue paying him benefits. According to Coan, there is no dispute that his claim arose while the Policy was still in effect. Therefore, the issue at the heart of the parties' dispute is whether the plaintiff is entitled to continuing benefits under the Policy's "Extension and Limitation of Coverage" provisions, which, as stated above are as follows.

> If a Covered Person is Totally Disabled on his/her coverage termination date benefits provided for that Covered Person by this policy and any attached riders will be extended:
>
> 1. for the injury or Sickness which caused the Total Disability;

2. during the uninterrupted continuance of the Total Disability; and

3. during the twelve months following the Covered Person's coverage termination date.

During the extended coverage the applicable policy and rider provisions, exclusions, exceptions and limitations will be the same was would have applied had coverage not terminated for such Covered Person.

According to the plaintiff, the three numbered paragraphs of this provision are "mutually exclusive." Reading the last paragraph first, Coan contends that where coverage is extended in the event of a non-renewal, the Policy will continue in full force and effect. Although it is not entirely clear from the plaintiff's papers, he appears to argue that under this rubric, paragraph one provides that the plaintiff is entitled to full coverage under the policy for all expenses resulting from the original disability up to $1,000,000. Apparently interpreting the three numbered paragraphs as mutually exclusive, the plaintiff contends that as a previously totally disabled person under paragraph one, he is entitled to continuous benefits until he exhausts the policy limit of one million dollars. In so doing, the plaintiff totally ignores the provisions of paragraphs two and three.

In his reply memorandum of law Coan adds an alternative argument, namely that non renewal of the Policy does not constitute a "termination of coverage" as that term is defined in the Policy. Accordingly, the plaintiff contends that the original Policy is still in effect and the plaintiff is entitled to continuing benefits.

On the other hand, the defendant contends that the requirements of the Extension and Limitation of Coverage provisions should be read in the conjunctive as is indicated by the use of the word "and" after the second numbered paragraph. According to State Farm, Coan's reading of this provision ignores both "the clear predicate" contained at the beginning of these provisions which require that the insured be totally disabled at the time benefits are terminated and the concluding paragraph which states that extended coverage is subject to the exclusions, exceptions and limitations contained in the underlying Policy.

*Discussion*

### 1. Summary Judgment Standard

■ A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Terminate Control Corporation v. Horowitz,* 28 F.3d 1335, 1352 (2d Cir.1994) (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990).

■ Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994); *Rattner v. Netburn,* 930 F.2d 204 (2d Cir.1991). Here, both parties agree that there are no material issues of fact, and summary judgment is appropriate.

## 2. *The parties' motions*

■ This case is essentially one of contract interpretation. *See, e.g., Kimmins Industrial Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir.1994) (applying contract principles to interpret an insurance policy). Under New York law, which applies to this case, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. *Village of Sylvan Beach v. The Travelers Indemnity Co.,* 55 F.3d 114, 115 (2d Cir.1995). "[I]f the provisions are clear and unambiguous, courts are to enforce them as written." *Id., citing, Maurice Goldman & Sons, Inc. v. Hanover Ins. Co.,* 80 N.Y.2d 986, 987, 592 N.Y.S.2d 645, 646, 607 N.E.2d 792, 793 (1992); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) ("When the terms of an insurance policy are clear and unambiguous, they must be accorded their ordinary meaning"). However, in insurance cases, if the policy language is ambiguous, the ambiguity must be interpreted in favor of the insured. *Sylvan Beach,* 55 F.3d at 115.

■ The language at the heart of the parties dispute is the Policy's "Extension and Limitation of Coverage" provision which, has been set forth above. As previously discussed, the plaintiff asserts that the three numbered paragraphs are mutually exclusive, and that he qualifies for continued benefits up to $1,000,000 pursuant to paragraph one. Conversely, the defendant contends that the requirements of these subparagraphs are conjunctive and therefore all three apply to Coan's extension of coverage.

Preliminarily, the Court notes that while parties agree that the Extension and Limitations of Coverage provisions are unambiguous, they proceed to assign to the same terms different meanings. While conflicting interpretations ordinarily may indicate an ambiguity, in the Court's view, despite these differing interpretations, the terms at issue are sufficiently clear and unambiguous on their face to warrant a determination as a matter of law and the award of summary judgment.

The first sentence of the Extension and Limitation of Coverage provisions states that coverage may be extended only if two preliminary conditions are satisfied: (1) the original coverage is terminated, and (2) the covered person is totally disabled on the date of termination. If these two requirements are fulfilled, the coverage will be extended as defined by the three numbered paragraphs, which follow the first sentence.

The clear and unambiguous meaning of these three paragraphs is that the extension of coverage will be "(1) *for* the Injury which caused the Total Disability," "(2) *during* the uninterrupted continuance of the Total Disability," "*and* (3) *during* the twelve months following the Covered Person's coverage termination date." In analyzing these three requirements, the Court notes that each subparagraph uses the word "for" or "during" to describe the provisions that follow. This choice of words is important because it alerts the policy holder to the fact that the phrases that follow those words describe the contours of the extension, *i.e.,* the nature and duration for which the extension is applicable. Moreover, these provisions are contained in a single sentence broken down into three subdivisions and stated in the conjunctive, as demonstrated by use of the word "and" connecting the second and third subdivisions. This conjunctive structure indicates that all three prongs must be applied to an extension of benefits.

The second sentence of the extended coverage provision states that all of the provisions in the Policy will apply in the extended period.

The Court finds that these extended coverage provisions were complied with by State Farm as a matter of law. On April 3, 1993, the defendant elected not to renew the plaintiff's policy. This decision was in accordance with both New York State law, *see First United American Life Ins. Co. v. Curiale,* 200 A.D.2d 243, 613 N.Y.S.2d 494, 495 (3d Dept.1994) (recognizing that insurers have the option to continue their policy in accordance with the statute's community rating requirements, or to withdraw from the New York market), and the terms of the Policy's "Renewability" provisions, which allows the defendant to "discontinu[e a policy] based on

the prior written approval of Department of Insurance." This prior written approval is evidenced by letters of confirmation sent by the New York State Department of Insurance. On April 27, 1993, the defendant advised the plaintiff by mail that although his Policy would not be renewed, he would be eligible for an extension of coverage under the provisions set forth above and at issue in this case. Pursuant to the three enumerated subparagraphs governing the extension provisions, the extension provided to the plaintiff was *for* the length of the injury or sickness causing the disability, *during* the uninterrupted continuance of the total disability *and during* the twelve month period following the termination of coverage, namely from April 3, 1993 to April 3, 1994.

The clearly expressed language in the provision limited a totally disabled person, whose policy was not renewed in accordance with the policy's terms, to an extension for a period of twelve months and no longer. Accordingly, the policy extension of coverage requirements were fully complied with by State Farm when it paid benefits to the plaintiff from April 3, 1993 to April 3, 1994.

In reaching this decision, the Court is mindful of the Policy's provision that "[a]ny refusal to renew this policy shall be without prejudice to any claim originating while the policy is in force." The plaintiff argues that this statement refers to claims arising after the Policy was terminated because of non-renewal where the claim is based on an injury predating the termination, a sort of reversion back theory. The Court disagrees.

A review of the Renewability provisions reveals the flaw in this argument. As the defendant correctly asserts, it can decline to renew the Policy for several stated reasons. One such reason is discontinuance with State approval. A second reason is for filing fraudulent claims. Applying Coan's reasoning to this second scenario implies that proponents of fraudulent claims would be entitled to benefits after their policy was not renewed on that ground. Such an outcome could not have been intended by the parties and is inconceivable.

█ The plaintiff further contends that the defendant's election not to renew the

Policy constitutes an unlawful modification of the insurance contract citing *Danzig v. Dikman,* 78 A.D.2d 303, 434 N.Y.S.2d 217 (1st Dept.1980). However, *Danzig* is clearly distinguishable on its facts. In *Danzig,* the insurer modified the insurance contract after the plaintiff's right to benefits vested. In this case the insurance policy was never modified. Rather, the defendant simply exercised its contractual right not to renew the policy in accordance with both state law and the Policy's original terms, which were in effect when the Policy was issued on October 3, 1990. Therefore, the attempt to retroactively limit benefits contrary to the plain terms of the insurance policy done in *Danzig* is not present in this case.

█ Finally, the plaintiff contends that the defendant's election not to renew the Policy did not constitute a termination of benefits, and therefore he is still covered by the original policy. The Court finds this argument to be without merit. While the Policy provisions governing "termination of coverage" do not expressly include non-renewal, no other interpretation is logical or reasonable. If the failure to renew a policy did not constitute a termination of coverage, there would be no need for the "extension of coverage" provisions as the result of a non-renewal under any circumstances. The Court declines to accept such an illogical conclusion.

Accordingly, the plaintiff's motion for summary judgment is denied and the defendant's cross motion for summary judgment dismissing the complaint is granted.

*Conclusion*

After reviewing the papers submitted by both parties, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED that the plaintiff's motion for summary judgment in his favor pursuant to Fed.R.Civ.P. 56 is denied; it is further

ORDERED that the defendant's motion for summary judgment in its favor pursuant to Fed.R.Civ. 56, dismissing the complaint, is granted; and it is further

ORDERED that the Clerk of the Court enter judgment in favor of the defendant and close this case.

SO ORDERED.