OPINION OF THE COURT
Edward J. Greenfield, J.
Defendant Metropolitan Life Insurance Company (Metropol *642 itan) moves and codefendants, the State University of New York College of Optometry and the Center for Vision Care Policy of the State University of New York, College of Optometry (the College and the Center), cross-move for an order, pursuant to CPLR 3212, granting summary judgment dismissing the complaint. Plaintiffs also cross-move for an order pursuant to CPLR 3212 granting summary judgment in their favor on the issue of liability as to defendant Metropolitan.
This is a purported class action brought by plaintiffs, who are licensed optometrists, on behalf of themselves and all other similarly situated optometrists. In essence, plaintiffs challenge the representation and reimbursement of optometrists by Metropolitan in the Empire Plan by which it provides group health insurance for New York State employees pursuant to an agreement with the State of New York.
Plaintiffs contend that Metropolitan conspired to violate the so-called "Freedom of Choice Law” (Insurance Law § 4235 [f]) and the State Antitrust Law (General Business Law § 340) in the following manner: (a) by excluding optometrists from participation in the Empire Plan; and (b) by declining to reimburse participating optometrists for diagnostic examinations while paying opthalmologists for similar examinations.
Education Law § 7101 (1) defines the practice of optometry as follows: "1. The practice of the profession of optometry is defined as diagnosing any optical deficiency, optical deformity, visual anomaly or muscular anomaly of the human eye, aiding or correcting such deficiency, deformity or anomaly * * * by prescribing or providing orthoptics or vision training. Drugs shall not be used in such practice except pursuant to subdivisions two and three of this section.” (Emphasis supplied.)
Section 4235 (f) of the Insurance Law, commonly referred to as the Freedom of Choice Law, states, in part, as follows:
"§ 4235. Group accident and health insurance * * *
"(4) Notwithstanding any provisions of a policy of group accident, group health or group accident and health insurance, whenever such policy provides for reimbursement for * * *
"(C) any optometric service which is within the lawful scope of practice of a licensed optometrist, a subscriber to such policy shall be entitled to reimbursement for such service, whether the said service is performed by a physician or licensed optometrist and when such policy or any certificate issued thereunder or delivered or issued for delivery without *643 the state by an authorized insurer so provides, covered persons residing in this state shall be entitled to reimbursement for that service which may be rendered by an optometrist as herein provided. Unless such policy shall otherwise provide, there shall be no reimbursement for opthalmic materials, lenses, spectacles, eyeglasses, and/or appurtenances thereto”.
Thus, the law is clear that any optometric service which is within the scope of practice of a licensed optometrist which would be reimbursed if performed by an ophthalmologist shall be reimbursed where performed by an optometrist.
In the case at bar, the service for which plaintiffs allege that Metropolitan wrongfully refuses to reimburse them (and other similarly situated optometrists) is optometric office visits in connection with the diagnosis and treatment or management of optical problems. Since optometrists perform services in addition to refraction for determination of the need for eyeglasses, office visits for diagnosis and treatment by optometrists are necessary. Additionally, current procedural terminology (CPT Codes) are universally used by insurance companies and other third-party providers in paying for the services of both ophthalmologists and optometrists. These codes are used by the insurer (in this case Metropolitan) to define reimbursement procedures under the plan.
Opthalmologic services are defined by the CPT manual thus: "comprehensive ophthalmological services: A level of service in which a general evaluation of the complete visual system is made. The comprehensive services constitute a single service entity but need not be performed at one session. The service includes history, general medical observation, external and ophthalmoscopic examination, gross visual fields and basic sensorimotor examination. It often includes, as indicated; biomicroscopy, examination with cycloplegia or mydriases, tonometry, and usually determination of the refractive state unless known, or unless the condition of the medial precludes this or it is otherwise contraindicated, as in presence of trauma or severe inflammation. It always includes initiation of diagnostic and treatment programs as indicated.”
Optometric services are similarly defined by the CPT manual: "comprehensive service: A level of service in which a general evaluation of the complete visual system is made. The comprehensive services constitute a single service entity, but need not be performed in one session. When indicated in the doctor’s professional judgment, this service may include, but is *644 not limited to history, general health observation, external examination of the eye and adnexa, ophthalmoscopic examination, determination of the refractive state, basic sensorimotor and binocularity examination, biomicroscopy, tonometry, gross visual fields and blood pressure screening. It may include initiation of diagnostic and treatment programs, or referral, as indicated. The treatment services include the prescription of lenses, other therapy or arranging for special optometric diagnostic or treatment services, consultation, laboratory procedures, etc., as may be indicated.”
The court notes that both the New York State Insurance Department, in an informal opinion dated February 4, 1987, and the New York State Department of Civil Service, in an informal opinion dated June 2, 1988, have concluded that "Metropolitan is obligated to process claims for examinations performed by [an] optometrist, when they are for the purpose of a diagnosis and not merely for the prescription of glasses.” This court concurs in the reasoning of the State Insurance Department and the Department of Civil Service. The court also notes that in an analogous situation, the Court of Appeals held against Metropolitan for refusing to pay psychologists for certain treatment of mental and emotional illness rendered by psychologists, which treatment was common to both psychiatrists and psychologists (Moore v Metropolitan Life Ins. Co., 33 NY2d 304 [1973]).
Accordingly, the cross motion of plaintiffs is granted to the extent of granting partial summary judgment in their favor (CPLR 3212 [e]) against Metropolitan on the first cause of action to the extent of declaring that Metropolitan’s refusal to reimburse optometrists for diagnostic office visits for services which, if rendered by participating ophthalmologists, would otherwise be reimbursed, is violative of the Freedom of Choice Law (Insurance Law § 4235 [f]). In all other respects, plaintiffs’ cross motion for summary judgment is denied without prejudice. In view of this holding, Metropolitan’s motion for summary judgment dismissing the complaint is denied.
The cross motion of the State defendants, the College and the Center, for summary judgment dismissing the complaint as to them is granted and the complaint is dismissed and severed as to them. The State’s licensing limitations applicable to optometrists constitute direct State action which, as a matter of law, is exempt from the antitrust laws (Fisher v City of Berkeley, Cal., 275 US 260, 264 [1986]). Furthermore, plaintiffs have failed to demonstrate any "conspiracy”. Moreover, to *645 the extent that the complaint seeks to recover monetary damages from the College and the Center, which are instrumentalities of the State, this court lacks subject matter jurisdiction since such an action may only be brought in the Court of Claims.